**William J. HART and Paul A. Stackhouse, Plaintiffs,**

v.

**UNITED STEELWORKERS OF AMERICA, A.F.L.–C.I.O.–C.L.C., and I. W. Abel, President, Defendants.**

Civ. A. No. 72–904.

United States District Court,
W. D. Pennsylvania.

Nov. 13, 1972.

Paul A. Simmons, Monongahela, Pa., for plaintiffs.

Michael H. Gottesman, Washington, D. C., Carl B. Frankel, and James D. English, Pittsburgh, Pa., for defendants.

## OPINION and ORDER

McCUNE, District Judge.

This is a suit for injunctive relief brought by two prospective candidates for International elective office of the 1,400,000 member United Steelworkers of America (hereafter the Union). They seek to enjoin the enforcement of a provision of the Union constitution which would prevent their candidacies because of their age contending that the constitution violates the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621–634,[1] (hereafter the Act).

Plaintiff William J. Hart is presently the Director of District 19 of the Union and desires to run for the office of International President. Plaintiff Paul A. Stackhouse is currently a Staff Representative of the Union in District 19 and seeks to run for the office of Director of District 19.

International elections are held every four years and the next election is scheduled to be held on February 13, 1973. According to the constitution's election timetable,[2] nomination certificates will be sent by the International Secretary-Treasurer's office to the Locals by November 14, 1972, and must be returned to the International Secretary-Treasurer's office by the Locals by December 15, 1972. Plaintiffs and defendant both agree that the end of the "nominating period" referred to in Article IV, Section 3[3] is December 15, 1972.

Plaintiff Hart will become 65 years of age on December 7, 1972, and plaintiff Stackhouse will reach 65 on December 8, 1972. Since both will become 65 before the end of the "nominating period" (December 15, 1972) Union President I. W. Abel has ruled that under Article IV, Section 3, they are ineligible to become candidates for the offices they seek.

---

1. Plaintiffs rely on 29 U.S.C. § 623(c) (2) which provides: (c) It shall be unlawful for a labor organization—

   (1) to exclude or to expel from its membership, or otherwise to discriminate against, any individual because of his age;

   (2) to limit, segregate, or classify its membership, or to classify or fail or refuse to refer for employment any individual, in any way which would deprive or tend to deprive any individual of employment opportunities, or would limit such employment opportunities or otherwise adversely affect his status as an employee or as an applicant for employment, because of such individual's age; . . . ."

2. Article V, Section 4 provides, in pertinent part that "the International Secretary-Treasurer shall prepare nomination certificates and envelopes and send them to the Local Unions not later than ninety (90) days before the date of the election. The Local Union Recording Secretary shall complete the nomination certificates filling in the names of the members nominated by the Local Union for the various offices. . . . and shall forward the same to reach the International Secretary-Treasurer's office not later than sixty (60) days before the election."

3. Article IV, Section 3 of the Union Constitution provides that "No member shall be eligible for nomination to an International office who shall have attained the age of 65 years before the end of the nominating period specified in Article V, Section 4."

Plaintiffs argue that since they can theoretically, if not in fact, secure the number of nominations they need to become candidates[4] before they turn 65 (i. e., between November 14 and December 7 and 8 respectively) they should be permitted to run. They contend that the Union by not permitting them to run is acting in violation of the Age Discrimination in Employment Act since they are being denied an employment opportunity because of their age.

■ The threshold question which we must consider is whether the coverage of the Act extends to the plaintiffs. There is no dispute that the Union falls under the provisions of § 623(c) and that running for an International office is an "employment opportunity" for purposes of § 623(c) (2). Section 631, however, specifies that the Act is intended to cover only persons in the 40 to 65 year old age category.[5] We think that this section effectively denies plaintiffs the protection of the Act.

■ This is the same interpretation of the Act given by the Solicitor of Labor on behalf of the Secretary of Labor. In a letter to the plaintiffs dated October 13, 1972, the Solicitor concluded that

". . . the Age Discrimination in Employment Act does not cover persons 65 and over. Since Mr. Hart and Mr. Stackhouse will both be 65 before February, 1973, the earliest time they could take office, the age limitation on eligibility for nomination contained in the Union's Constitution does not result in a substantive violation of the Act. Under these circumstances, the Secretary must decline to give the notifications or to initiate the conciliation procedures provided by section 7(d) (§ 626) of

the Act." Letter from Paul A. Schubert, Solicitor of Labor, to Paul A. Simmons, Esq., Attorney for plaintiffs, a copy of which is attached to plaintiffs' complaint.

This ruling by the Secretary of Labor is entitled to be given great weight by the court in deciding the proper interpretation of the Act, especially where, as here, the case is one of first impression.

When faced with a problem of statutory construction, this Court shows great deference to the interpretation given the statute by the officers or agency charged with its administration. . . . "Particularly is this respect due when the administrative practice at stake 'involves a contemporaneous construction of a statute by the men charged with the responsibility of setting its machinery in motion, of making the parts work efficiently and smoothly while they are yet untried and new.'" Udall v. Tallman, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L. Ed.2d 616 (1965), quoting Power Reactor v. Electricians, 367 U.S. 396, 408, 81 S.Ct. 1529, 6 L.Ed.2d 924 (1961). We think the Secretary's ruling is correct.

■ Nevertheless even if § 631 did not remove this case from the operation of the act, we do not think plaintiffs have a good cause of action. Plaintiffs argue that they should be treated as "applicants" for the union offices and urge us to rule that since they could conceivably "qualify" for jobs (i. e. secure the requisite number of Local nominations to be certified as a candidate) before turning 65 they cannot be discriminated against in the "hiring" process even though they will be 65 when they begin work.

---

4. According to plaintiff Hart's testimony at the injunction hearing, he must be nominated by between 145 and 150 of the 6000 Union locals to be certified as a candidate for International President. He testified further that plaintiff Stackhouse must be nominated by 9 of the 178 locals in District 19 to be certified as a candidate for District Director.

5. "§ 631 Age limits.
  The prohibitions in this chapter shall be limited to individuals who are at least forty years of age but less than sixty-five years of age." 29 U.S.C.A. § 631.

It is established that the protection of the Act extends to applicants for employment.[6] However, we do not find plaintiffs' analogy persuasive under the facts at hand.

The purpose of this Act is "to prohibit *arbitrary* age discrimination in employment." (Emphasis added). 29 U.S.C. § 621(b).[7] While employees and job applicants are entitled to protection under the Act when they have been arbitrarily discriminated against because of age they are not entitled to relief where there has been merely a reasonable differentiation on some basis not intended as a subterfuge to avoid application of the Act. Kincaid v. United Steelworkers of America, No. 71H–229(2) (N.D.Ind.—Hammond Division, July 25, 1972). The cut off date at the end of the nominating period appears to us to be neither arbitrary nor unreasonable.

We think that the age cut off date in the Union Constitution was impelled, at least in part, by administrative requirements of the nominating process[8] and, in any event, was not designed to avoid the purposes of the Act. Indeed a candidate who turned 65 the day after the nomination period closed could serve, if elected, until he was well over 69 years of age.

In conclusion, we hold, first, that § 631 specifically excludes plaintiffs from the coverage of the Act because they will have turned 65 years of age by the date they would begin employment and are, therefore, not within the class of persons the Act was intended to protect. Second, even if § 631 did not exclude them, they would not be entitled to relief because the alleged age discrimination involved is not arbitrary.

Plaintiffs' request for injunctive relief is denied. It is so ordered.

---

6. "  .   .   .   . it was clearly the intent of the Congress that the term "employee" in that proviso (§ 7(c), 29 U.S.C. § 626(c)) should apply to any person who has a right to bring an action under the Act, including an applicant for employment." 29 C.F.R. § 860.30.

7. § 621 *Congressional statement of findings and purpose.*
"  .   .   .   . (b) It is therefore the purpose of this chapter to promote employment of older persons based on their ability rather than age; to prohibit arbitrary age discrimination in employment; to help employers and workers find ways of meeting problems arising from the impact of age on employment." 29 U.S.C. § 621(b).

8. The Union's general counsel, Bernard Kleiman, testified that if a candidate's birthday fell in the middle of the nominating period there would be insurmountable procedural and administrative difficulties in determining whether or not the candidate received the number of nominations required before his birthday. The Locals have great flexibility in setting their nomination meeting dates and there is no way for the Union to determine the date on which the Local met to make its determination. Even if the meeting date could be established, it would be unfair to those Locals which nominated a candidate who turned out to be ineligible (i. e., not get enough nominations by his birthday) because those Locals then would have forfeited the right to nominate a candidate who would be eligible.