Merlin E. HUGHES, Appellant,

v.

BLACK HILLS POWER AND LIGHT COMPANY, a South Dakota Corporation, Robert Asheim, Everett Pompy and Leo Hadcock, Appellees.

No. 78–1135.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 15, 1978.

Decided Oct. 25, 1978.

Curtis S. Jénsen, Gunderson, Farrar, Aldrich, Warder & DeMersseman, Rapid City, S.D., for appellant; Robert W. Gunderson and Glen H. Johnson, Rapid City, S.D., on the briefs.

David E. Morrill of Morrill, Hansen & Hubbard, Sturgis, S.D., for appellee.

Before LAY and BRIGHT, Circuit Judges, and HARPER,* District Judge.

LAY, Circuit Judge.

Merlin E. Hughes appeals from a judgment holding that his discharge from Black Hills Power and Light Company was not unlawful under the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621–634. The determinative issue is whether the district court's findings are clearly erroneous.[1] Upon careful review of the record we affirm.

Merlin Hughes was employed by Black Hills Power and Light Company (the Company) for 23 years during all of which time he served as the supervisor at the Company's warehouse. In April 1975 the Company informed Hughes that he was going to be laid off and replaced by another employee. At that time Hughes was 57 years of age. He then instituted this action alleging that he was discharged unlawfully because of his age.

Following a trial to the court the district court found that Hughes was responsible for supervising all the warehouse functions, which included overseeing the timely and accurate dispensing of materials to line and service crews, preparing written reports for timely delivery to other departments within the Company and accounting for returned new and used materials. The district court found that serious deficiencies existed in these areas at and prior to Hughes' discharge. The district court also found that the Company had received complaints about the warehouse, which grew considerably from 1968 to 1972 and became more frequent in 1973, 1974 and early 1975. The district court further found that a personality conflict between Hughes and his supervisor was so significant that the Company believed that Hughes' discharge would be in its best interests. On these bases the district court found that the Company's dissatisfaction with Hughes' job performance was the reason for his discharge.

On appeal Hughes contends that the district court's findings are unsupported by the evidence. We do not agree. The record shows that large amounts of returned new and used materials were allowed to remain in the yard for an unreasonable amount of time without being counted and

---

* Roy W. Harper, Senior District Judge for the Eastern District of Missouri, sitting by designation.

1. Hughes also asserts that the district court failed properly to allocate the burden of proof between the parties. Hughes contends that once an employee establishes a prima facie case of age discrimination, the burden of proof shifts to the employer to prove legitimate, nondiscriminatory reasons for its actions by a preponderance of the evidence. This argument confuses the burden of proof with the burden of going forward with the evidence once a prima facie case is established. The district court concluded that once the employer articulates some legitimate, nondiscriminatory reason for the employee's discharge, *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the employee must still bear the burden of proof to establish by a preponderance of the evidence that the discharge was unlawful. *Bittar v. Air Canada,* 512 F.2d 582 (5th Cir. 1975). We find nothing improper with the district court's analysis.

that written reports were not being prepared and delivered timely to other departments within the Company. The record also shows that the Company received numerous complaints about the warehouse. Hughes' supervisor, Leo Hadcock, testified that Hughes had a bad attitude. Hadcock also testified that he had a private meeting with Hughes and many follow-up meetings concerning Hughes' attitude and function at the warehouse, but that the warehouse operation did not improve. Robert Asheim, the Company president who made the decision to terminate Hughes' employ, testified that in his judgment the problems at the warehouse could not be solved by Hughes, that Hughes was not likely to improve and that Hughes was not responsive to Hadcock's supervision. On this record we cannot say that the district court's findings are clearly erroneous. *Surrisi v. Conwed Corp.,* 510 F.2d 1088 (8th Cir. 1975).

Hughes makes much of the fact that his employment record states that the reason for his discharge was a "layoff" due to adverse economic conditions. Pointing to certain statistical evidence showing a decrease in the mean average age of the company's non-union salaried employees and the fact that he was replaced by a younger person, Hughes contends that the reason given for his discharge is pretextual. Company officials testified that the true reason for Hughes' discharge was not set forth in order not to embarrass him. The ultimate credibility of this conflicting evidence must remain with the trier of fact. As the district court noted, the Company was less than candid in communicating its reasons for Hughes' discharge at the time he was notified that his employment would be terminated. That does not detract, however, from the evidence which supports the district court's finding that the Company's dissatisfaction with Hughes' performance was the true reason for his discharge.

Affirmed.