Calvin S. MOORE, Clifford B. Anderson, James W. Baker, Louis B. Bowen, Walter M. Kelley, Wesley P. Maynard, Lewis F. Hicks, Leah J. Moulton, Robert J. Gutting, and Ralph E. Cox, Plaintiffs,

Rudolph H. Nesbitt and George H. Schmeelk, Jr., Plaintiff-Intervenors,

v.

## SEARS, ROEBUCK AND CO.

Civ. A. No. 76–1041.

United States District Court, N. D. Georgia, Atlanta Division.

Feb. 1, 1979.

Ellsworth T. Simpson, Washington, D. C., Margie Hames and Mary Ann B. Oakley, Atlanta, Ga., Lionel H. Silberman, Orlando, Fla., for plaintiffs.

John R. Crenshaw and Glen A. Reed, Alston, Miller & Gaines, Atlanta, Ga., for defendant.

### ORDER

RICHARD C. FREEMAN, District Judge.

This is an action brought pursuant to the Age Discrimination in Employment Act of 1967 [hereinafter "ADEA"], 29 U.S.C. § 621 *et seq.* The plaintiffs allege that they were discharged or forced to accept early retirement by defendant Sears, Roebuck & Company in violation of Section 4(a)(1) of the Act, 29 U.S.C. § 623(a)(1).[1] The case is presently before the court on Sears' motion for summary judgment[2] against plaintiffs Anderson, Kelley, Nesbitt, Bowen, Baker, and Moore.[3] For the reasons set forth below, we DENY the motion as to all of the plaintiffs.

The instant motion rests on Sears' contention that none of the plaintiffs is able to make out a prima facie case of age discrimination under the governing law in the Fifth Circuit. Sears argues, in addition, that the evidence of record conclusively shows that its decision to terminate each of the plaintiffs was founded on good cause, or was otherwise "based on reasonable factors other than age." 29 U.S.C. § 623(f)(1). We will briefly review the circumstances under which each plaintiff was terminated or retired, to the extent necessary to permit application of the standards for making out a prima facie case. We emphasize, however, that with the exception of the ages of the individuals involved, none of the circumstances we discuss should be deemed free from ambiguity. The parties may dispute at trial the proper characterization of acts such as termination or replacement of an employee, or abolition of his position. We do not imply that there lack genuine issues as to the "facts" set forth below, but merely provide an outline within which to frame our discussion of the applicable law.

In late 1974 and early 1975, Sears initiated a company-wide program of cost reduction. Under the program, four of the plaintiffs against whom Sears now seeks sum-

---

1. Section 623(a) provides:

   It shall be unlawful for an employer—
   (1) to fail or refuse to hire or to discharge any individual or . otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age; . . .

2. Sears filed its summary judgment motion on May 1, 1978. On July 26, 1978, it filed a lengthy amendment to the original motion. We take up both the motion and the amended motion at this time.

3. These individuals are six of eleven named plaintiffs in this action.

mary judgment saw their positions eliminated. Plaintiff Anderson was discharged at the age of 52 when his job as Merchandise Manager in Charlotte, North Carolina, was abolished. His responsibilities were divided among other Sears employees in the merchandising field. Plaintiff Kelley was forced to accept early retirement at 55 when Sears abolished his position, which had been termed a "Special Assignment" in the Atlanta Catalog Merchandise Distribution Center. It appears that no one assumed the duties he had performed at that job.

Plaintiff-intervenor Nesbitt was forced to accept early retirement at the age of 55 when Sears eliminated his position as Staff Assistant in the Installation Department for the Southern Territory. His responsibilities were divided among four remaining employees. One of these four was 32 years old; one was 40; the other two were both 49. Plaintiff Bowen was 51 when Sears discharged him and abolished his job as Liquidation Sales Coordinator in the Atlanta Catalog Merchandise Distribution Center. His duties were taken over by two employees, one of whom was 23 and one of whom was 42.

The remaining two plaintiffs now facing summary judgment did not have their jobs eliminated, but were directly replaced by other employees. Plaintiff Baker was forced to accept early retirement at 57. His replacement as Automotive Center Manager in Nashville, Tennessee, was 41 years old. Plaintiff Moore was 48 when Sears discharged him from his position as Store Manager in Cleveland, Tennessee. His replacement was also 41.

At some risk of oversimplification, we may classify the challenged plaintiffs as having been discharged or involuntarily retired in one of three fashions. Each plaintiff either (1) had his position eliminated and his duties taken over by others; (2) had his position and his duties eliminated;

or (3) had his position filled in a one-for-one replacement. We provide these characterizations because, as will be seen below, each is susceptible of slightly different analysis in determining the requirements for a prima facie showing of age discrimination.

■ The dominant theme sounded by Sears in its extensive briefing of the summary judgment motion derives from one of the age discrimination cases decided by the Fifth Circuit Court of Appeals. In *Price v. Maryland Casualty Co.,* 561 F.2d 609, 612 (5th Cir. 1977), the court held that:

> [T]o show a prima facie case of age discrimination, the plaintiff-employee must show that (1) he was a member of the protected group, (2) he was discharged, (3) he was replaced with a person outside the protecting group, and (4) he was qualified to do the job.

Sears contends that not one of the six plaintiffs can satisfy the third *Price* requirement. Four of the plaintiffs, Sears argues, were not replaced at all. The other two were replaced by other members of the "protected class."[4] Since none of the plaintiffs is capable of making out a prima facie case under *Price,* Sears concludes that each must suffer summary judgment regardless of what other proof of discrimination he may adduce.

Sears' first point is technically correct: none of the plaintiffs was, strictly speaking, "replaced" by an individual under the age of forty. We are consequently faced with two questions. The first is whether plaintiffs—in this instance, Anderson, Kelley, Nesbitt, and Bowen—who were not strictly "replaced," but whose positions were eliminated, are nevertheless capable of building a prima facie case of age discrimination. The second is whether plaintiffs—here, Baker and Moore—who were replaced, but with individuals also protected by the Act, can still make out a prima facie case. The language in *Price* suggests a response in the negative. We reach the contrary conclu-

4. By "protected class," Sears means those persons between the ages of 40 and 69, to whom 29 U.S.C. § 631 limits the protection of the Act. Prior to the passage of the 1978 amendments,

Pub. L. No. 95–256, 92 Stat. 189 (1978), the protected class included persons between 40 and 64.

sion, however, and find that under the governing standards all six plaintiffs are capable of making out the necessary prima facie case. In addition, we conclude that the fact that plaintiffs Baker and Moore were replaced by other members of the protected class does not constitute evidence by which Sears can conclusively rebut a prima facie showing and obtain summary judgment against those plaintiffs.

In *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court first articulated the specific elements of a prima facie showing in a discrimination action. The respondent, plaintiff below, had charged that he was denied employment because of his participation in a civil rights protest at McDonnell Douglas' headquarters in St. Louis, Missouri. McDonnell Douglas had answered that the protest was illegal, and that it was the respondent's participation in the unlawful conduct that prompted and justified McDonnell Douglas' refusal to hire him. Justice Powell wrote:

Thus, the issue at the trial on remand is framed by those opposing factual contentions. The two opinions of the Court of Appeals and the several opinions of the three judges of that court attempted, with a notable lack of harmony, to state the applicable rules as to burden of proof and how this shifts upon the making of a prima facie case. We now address this problem.

The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

411 U.S. at 801–02, 93 S.Ct. at 1824 (footnotes omitted). Thoughtfully, the court added the following footnote:

The facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required from respondent is not necessarily applicable in every respect to differing factual situations.

*Id.* at 802 n. 13, 93 S.Ct. at 1824.

The court continued:

In the instant case, we agree with the Court of Appeals that respondent proved a prima facie case. [*Green v. McDonnell Douglas Corp.,*] 463 F.2d 337, 353. Petitioner sought mechanics, respondent's trade, and continued to do so after respondent's rejection. Petitioner, moreover, does not dispute respondent's qualifications and acknowledges that his past work performance in petitioner's employ was "satisfactory."

The burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection. We need not attempt in the instant case to detail every matter which fairly could be recognized as a reasonable basis for a refusal to hire. Here petitioner has assigned respondent's participation in unlawful conduct against it as the cause for his rejection. We think that this suffices to discharge petitioner's burden of proof at this stage and to meet respondent's prima facie case of discrimination.

*Id.* at 802–03, 93 S.Ct. at 1824 (footnotes omitted).

Recently, the Court has had occasion to comment further on the rationale underlying the prima facie discrimination case. In *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 576–578, 98 S.Ct. 2943, 2949–50, 57 L.Ed.2d 957 (1978), Justice Rehnquist wrote:

The central focus of the inquiry in a case such as this is always whether the employer is treating "some people less favorably than others because of their race, color, religion, sex, or national origin." *International Brotherhood of Teamsters v. United States,* [431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854, 52 L.Ed.2d

396 (1977)]. The method suggested in *McDonnell Douglas* for pursuing this inquiry, however, was never intended to be rigid, mechanized, or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination. A prima facie case under *McDonnell Douglas* raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors. *See International Brotherhood of Teamsters v. United States, supra*, 431 U.S., at 358 n. 44 [97 S.Ct. at 1866.] And we are willing to presume this largely because we know from our experience that more often than not people do not act in a totally arbitrary manner, without any underlying reasons, especially in a business setting. Thus, when all legitimate reasons for rejecting an applicant have been eliminated as possible reasons for the employer's actions, it is more likely than not the employer, whom we generally assume acts only with some reason, based his decision on an impermissible consideration such as race.

From *McDonnell Douglas* and *Furnco*, we perceive that the notion of a prima facie case in a discrimination action is a fluid one. Because the principle essentially embodies a rule of common sense, corresponding to the inferences that will ordinarily be drawn from a particular set of circumstances, we see no reason to hold that it can. or must be expressed by a single formula. The prima facie showing is that which, evaluated "in the light of common experience," *Furnco*, 98 S.Ct. at 2949, raises the inference that an employment decision was probably based upon an impermissible factor. That showing will necessarily vary from case to case. Indeed, an inference of discrimination requiring rebuttal by a defendant may be raised by a variety of methods under a single set of facts. The Supreme Court cases belie any notion that there is a unique formula for a prima facie showing of age discrimination.

The ensemble of ADEA cases decided in the Fifth Circuit reinforces this principle. First, although individual decisions have occasionally set out specific prima facie tests, or even suggested that a particular standard is a formulation that a plaintiff "must show," *see Price*, 561 F.2d at 612, the elements actually given have differed from case to case. *See Marshall v. Westinghouse Electric Corp.*, 576 F.2d 588, 590 (5th Cir. 1978) (discharge); *Price*, 561 F.2d at 612 (discharge); *Lindsey v. Southwestern Bell Telephone Co.*, 546 F.2d 1123, 1124 n. 2 (5th Cir. 1977) (hiring). Indeed, *Price*, which first held definitively that the *McDonnell Douglas* prima facie test was applicable to age discrimination actions, adopted only a variation on the *McDonnell Douglas* formulation.[5]

Moreover, some of the cases have specifically rejected the concept of a rigid prima facie formula. In *Lindsey*, 546 F.2d at 1124, the court suggested that a plaintiff who was within the protected class and who qualified for the position he sought could complete a prima facie case of discrimination in promotion with statistical proof. It was the plaintiff's failure to come forward with that proof (as well as his inability to show he was qualified to perform the job for which he applied) that caused the court to affirm the trial court's judgment in the defendant's favor. And in *Marshall v. Goodyear Tire & Rubber Co.*, 554 F.2d 730, 735 (5th Cir. 1977), the court held plainly that:

> *McDonnell Douglas* does not establish an immutable definition of a prima facie case. The phrase simply refers to evidence sufficient for a finding in plaintiff's favor unless rebutted. *United States v. Wiggins*, 39 U.S. (14 Pet.) 334, 347, 10 L.Ed. 481, 488 (1840). The Court recognized that principle in *McDonnell Douglas*, for it noted that "[t]he facts necessarily will vary in Title VII cases, and the specification above of the prima

---

5. *Compare McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817, *with Price*, 561 F.2d at 612.

*Price* was a discharge case, while *McDonnell Douglas* involved hiring practices.

facie proof required . . . is not necessarily applicable in every respect to differing factual situations." 411 U.S. at 802 n. 13, 93 S.Ct. 1817. *See also Peters v. Jefferson Chemical Company,* 516 F.2d 447, 450 (5th Cir. 1975).

*Accord, Polstorff v. Fletcher,* 452 F.Supp. 17, 23–24 (N.D.Ala.1978) (*McDonnell Douglas* does not establish an immutable definition of a prima facie case in an ADEA action).

▮ The applicable case law therefore leads us to reject Sears' insistence on literal application of the *Price* formula as the single test of the plaintiffs' discrimination claims. Common sense leads to the same result, for even an employee (1) whose position is eliminated entirely, or (2) whose position is eliminated but whose duties are filled by others of his age, can still succeed in creating an inference, as conceived in *Furnco,* of discriminatory employment practice.

▮ The absence of a one-for-one replacement need not preclude the possibility that an employee has been terminated because of his age. An employer may, for example, decide that sound management practice requires a decrease in expenses and a reduction in payroll. The employer may decide he will eliminate one out of every six positions in order to accomplish the payroll reduction. If a 55 year old employee who was terminated under the program of job elimination can show that the employer consistently abolished the positions of other older employees, or that older employees

had their jobs eliminated in disproportionately high numbers, he will succeed in creating the inference which, unless rebutted by the employer, will lead to the conclusion that the employer eliminated the jobs because they were held by the older employees. The plaintiff may be able to create the same inference with direct evidence of discriminatory intent.[6]

▮ To summarize, we hold that any of the plaintiffs will make out a prima facie case of age discrimination in discharge if he shows: (1) that he was a member of the protected class; (2) that he was discharged; (3) that he was qualified for the position he held; and (4) if, in addition, he (a) shows he was replaced by a person younger than himself, (b) produces direct evidence of discriminatory intent, or (c) produces statistical evidence of discriminatory conduct.[7] The effect of such a showing will be to raise an inference of discrimination and to shift the burden to the defendant of producing evidence that the plaintiff's termination was founded on good cause or was based on factors other than age.[8] *Marshall v. Westinghouse,* 576 F.2d at 590. Although the defendant would bear the burden of production on rebuttal, the burden of persuasion remains with the plaintiff. *Id.*

▮ Responding to Sears' summary judgment motion, all six plaintiffs have submitted statistical data which they contend establishes that during its job reduction program Sears terminated a highly disproportionate number of employees over the age of 40 and, in particular, above the age

**6.** Moreover, the fact that a plaintiff's job duties were assumed by other employees of the same age does not logically preclude an inference of age discrimination in the decision as to *which* position to eliminate, at least so long as there was a reduction in staff rather than one-for-one replacement. At the same time, it would seem that assumption of job duties by younger employees may have positive significance. An employee whose position was technically abolished might be able to make a constructive showing of "replacement" if his duties were allocated exclusively, or principally, to younger employees. Such an employee could establish a prima facie case under *Price* without an initial production of statistical or direct evidence.

**7.** In keeping with the spirit of *McDonnell Douglas* and *Furnco,* we stress that even this list is not intended to be exhaustive of the possible means by which these or other plaintiffs can make out a prima facie case. We merely illustrate the acceptable alternatives presently suggested by the record.

**8.** An employer may also assert the affirmative defense that age is a bona fide occupational qualification for the plaintiff's position, 49 U.S.C. § 623(f)(1). Here, the employer also bears the burden of persuasion. *Marshall v. Westinghouse,* 576 F.2d at 591. The court does not understand Sears to assert this defense in the instant action.

of 55. The plaintiffs argue that the statistical pattern they have identified would be extremely unlikely to appear had age been no more than a random element in the discharge decisions. Sears challenges both the methodology and the proper interpretation of the plaintiffs' statistical data, and argues that the true figures prove equal treatment. Both sides support their contentions with expert affidavits, and it is clear to the court that the controversy presents a material issue of fact which may only be resolved at trial. *See Wilson v. Sealtest Foods Division of Kraftco*, 501 F.2d 84, 86 (5th Cir. 1974) (reversing directed verdict in ADEA action). Similarly, we may not now determine whether each plaintiff was "qualified" to do his job, that is, whether each was performing adequately at the time of termination.[9]

■ Sears makes a related argument, directed particularly to the claims of plaintiffs Baker and Moore. Baker, aged 57, and Moore, aged 48, were each replaced by 41 year olds. Sears contends that because they were replaced by persons within the protected class and because such persons are deemed by *Price* to be of equal age, there cannot possibly be a finding that Sears discriminated against either plaintiff. The court has no choice, Sears concludes, but to grant summary judgment against both.

We have already held that plaintiffs Baker and Moore can make out a prima facie case based upon a statistical showing. Sears' second argument may, however, have significance on rebuttal. Assuming for the moment that the Act treats all persons above the age of 40 identically, then in a one-for-one replacement, an employer's act of filling the vacated position with another employee over 40 creates a strong inference that age was not a factor in the decision to remove the original employee. *Furnco* teaches that we presume employers to act purposefully, and it is unlikely that an employer will discharge an employee because he thinks the man too old on one day, and hire a replacement of the same age on the next. Thus, Sears also argues that even if a plaintiff has raised an inference of discrimination in his prima facie case, the fact that he was replaced by another member of the protected class proves that the employer could not have discharged him because of animus against the class and requires entry of summary judgment for the employer.

We reject this contention for two reasons. First, the assumption that the Act treats all persons within the protected class identically is faulty. Plaintiffs Baker and Moore were replaced by individuals 16 and 7 years younger than themselves, and an employer violates the Act if he intentionally gives preference to an individual who is younger than the plaintiff, even though that individual is also within the "protected class" of persons between the ages of 40 and 70. *See* 29 U.S.C. § 631(a).

Admittedly, we have found authority to the contrary. The language of a number of cases suggests that where an employee is directly replaced by another younger individual, he may claim discrimination only when the replacement is not a member of

---

9. The cases diverge as to whether an ADEA plaintiff must show he was "qualified" as part of his prima facie discharge case. *Compare Marshall v. Westinghouse*, 576 F.2d at 590, *and Marshall v. Goodyear*, 554 F.2d at 735–36, *with Price*, 561 F.2d at 612 (5th Cir. 1977). We think the additional requirement is apt, particularly where the plaintiff's prima facie case rests on replacement by a younger person. The mere showing of replacement may be of only limited significance. It is not unusual that an elderly employee who is forced to leave his position will be replaced by a younger individual, regardless of the employer's motives for the termination. As an employee ages, the pool of available replacements who are younger than he becomes relatively larger. By also showing that he was performing adequately, the plaintiff will cast suspicion on the employer's motives for altering the status quo and thereby give added significance to the fact of replacement by a younger person. Ultimately, this additional requirement will not significantly hamper the plaintiff because he always must shoulder the burden of showing he was performing adequately any time an employer seeks to rebut his prima facie case by producing evidence that he was terminated "for good cause." *See Bittar v. Air Canada*, 512 F.2d 582 (5th Cir. 1975) (plaintiff retains ultimate burden of proving termination was not for good cause).

the protected class, *i. e.,* under 40 years old. *E. g., Price,* 561 F.2d at 612; *Marshall v. Goodyear,* 554 F.2d at 735–36. Moreover, the opinion in *Price,* 561 F.2d at 612, suggests that the court believed that age discrimination could not be a factor in the employer's decision to discharge a 56 year old, rather than a 50 or a 49 year old, employee.

Notions of practicality and predictability support the requirement of replacement by a person below the age of 40 in an ADEA case. Since replacement by a person of the "same" age has special significance in that it negates an inference of discrimination, we face the task of determining how many years difference there can be between a plaintiff and his replacement before an inference of age discrimination between the two will again arise. To broaden the ruling by holding that replacement by any person over the age of 40 negates an inference of discrimination would obviate the need for such fine distinctions.

The Act itself, however, nowhere expresses such a generalization. Section 631(a) merely restricts the class of persons who may claim protection of the Act. On its face, the section does not purport to establish ground rules governing how and when discrimination may be proved. Indeed, the Act mandates a person-by-person inquiry: section 623 outlaws discharge "[of] any individual . . . because of such individual's age."

The Department of Labor has adopted the view that discrimination may occur as among members of the protected class. 49 C.F.R. § 860.91 states:

(a) Although section 4 of the Act broadly makes unlawful various types of age discrimination by employers, employment agencies, and labor organizations, section 12 limits this protection to individuals who are at least 40 years of age but less than 65 years of age . . . [A]n employer will have violated the Act, in situations where it applies, when one individual within the age bracket of 40–65 is given job preference in hiring, assignment, promotion or any other term, condition, or privilege of employment, on the basis of age, over another individual within the same age bracket.

(b) Thus, if two men apply for employment to which the Act applies, and one is 42 and the other 52, the personnel officer or employer may not lawfully turn down either one on the basis of his age; he must make his decision on the basis of other factors, such as the capabilities and experience of the two individuals.

These regulations, promulgated soon after passage of the Act, 33 Fed.Reg. 9172 (1968), are by their own terms merely interpretive and do not carry the force of law. *See* 49 C.F.R. § 860.1. Nevertheless, we accord them the deference traditionally due an interpretation given a statute by the officers or agency charged with its administration. *Udall v. Tallman* 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965). "Particularly is this respect due when the administrative practice at stake 'involves a contemporaneous construction of a statute by the men charged with the responsibility of setting its machinery in motion; of making the parts work efficiently and smoothly while they are yet untried and new.'" *Power Reactor Development Co. v. International Union of Electricians,* 367 U.S. 396, 408, 81 S.Ct. 1529, 1535, 6 L.Ed.2d 924 (1961), *quoting Norwegian Nitrogen Products v. United States,* 288 U.S. 294, 315, 53 S.Ct. 350, 77 L.Ed. 796 (1933) (Cardozo, J.). *See Hart v. United Steelworkers of America,* 350 F.Supp. 294, 296 (W.D.Pa.1972) (great weight accorded ruling by Secretary of Labor in ADEA action), *vacated as moot,* 482 F.2d 282 (3d Cir. 1973).

There is also case law in accord with the Secretary's interpretation. In *Wilson v. Sealtest Foods Division of Kraftco Corp.,* 501 F.2d 84 (5th Cir. 1974), the court reversed a directed verdict in the defendant's favor where the plaintiff, who was 62 years of age, was replaced by a 50 year old. By holding that the plaintiff was entitled to take his case to the jury, the court could only have considered that age-based discrimination between the two could violate the Act.

The sole case we have found directly on point is *Polstorff v. Fletcher,* 452 F.Supp. 17 (N.D.Ala.1978). The court reasoned:

> The ADEA protects individuals from age discrimination. A 62-year-old is entitled to protection against being replaced by a 42-year-old if the only factor is age. There is no "protected group" in exactly the same sense as in sex, race or similar cases, although there is a "protected group" in a somewhat different sense.

452 F.Supp. at 24. In effect, the notion of a "protected class" has a narrower application in age discrimination cases than in the race or sex discrimination context. Because age is a relative rather than absolute status when taken as a basis for discrimination, it need not follow that all persons protected by the Act should be grouped together for purposes of delineating the extent of their protection. Judgment against plaintiffs Baker and Moore cannot be justified on the grounds that their direct replacements were above the age of 40, because these replacements were still younger than Baker and Moore. One might nevertheless infer that Baker and Moore were discharged because of their ages, and it is this discrimination which the Act prohibits, not merely discrimination based on membership in the class of persons over the age of 40.

Even if we were prepared to hold that the law of age discrimination does not distinguish among persons within the protected class, and that therefore replacement of a 65 year old by a 41 year old employee is deemed equivalent to replacement by another 65 year old, we still could not enter summary judgment against Baker and Moore. Here, a showing that the plaintiff was replaced by a person of his own age is, as we have already noted, in the nature of rebuttal to a prima facie case. Only in an extraordinary instance could rebuttal evidence be so conclusive as to permit summary adjudication. A plaintiff could reply to such evidence in a number of ways. He might, for example, show that the decision

to fire him was unrelated to the decision to hire his replacement, as might be the case where the choices are made at different levels or by different decisionmakers of a corporate employer. Alternatively, he might be able to prove that his replacement was extraordinarily well qualified, or was for some other reason hired *despite* his age.[10] Because of the heavy burden borne by any party seeking judgment as a matter of law under Rule 56, Fed.R.Civ.P., we do not think that a showing that a plaintiff was replaced by a person of his own age will, without more, justify summary judgment against him. *See* 6 *Moore's Federal Practice,* ¶ 56.15[1.–0] at 56–391, 419–22 (1976).

We reiterate that the facts relating to each plaintiff have been discussed only insofar as has been necessary to set out why judgment as a matter of law is not now possible against any of them. It remains to be determined at trial (1) whether any of the plaintiffs has in fact established a prima facie case, and (2) whether Sears can rebut each case made out by demonstrating that reasonable factors other than age justified its actions. *Marshall v. Westinghouse,* 576 F.2d at 590 (5th Cir. 1978). We hold that plaintiffs Anderson, Kelley, Nesbitt, Bowen, Baker, and Moore are all capable of making out a prima facie case, and that judgment as a matter of law may not be entered against them.

Accordingly, the motion of Sears, Roebuck & Co. for summary judgment against plaintiffs Anderson, Kelley, Nesbitt, Bowen, Baker, and Moore is DENIED.

IT IS SO ORDERED.

---

10. This list, of course, is not exhaustive. It is merely illustrative of the possible arguments that are still available to a plaintiff who was directly replaced by another individual of his own age, and of why such a showing should not ordinarily entitle a defendant to summary judgment.