Lawson H. SMITH, Plaintiff,

v.

**WORLD BOOK–CHILDCRAFT INTERNATIONAL, INC., Defendant.**

No. 80 C 1468.

United States District Court,
N. D. Illinois, E. D.

Sept. 2, 1980.

Rudy J. Huizenga, Donnelly & Associates, P. C., Detroit, Mich., Elizabeth Seidman, Baum, Sigman & Gold, Chicago, Ill., for plaintiff.

Jeremy Sherman, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

This is an action brought pursuant to the Age Discrimination in Employment Act of 1967 ("ADEA") 29 U.S.C. §§ 621 *et seq.* Plaintiff Lawson H. Smith ("Smith") alleges that in two separate instances his previous employer, World Book -Childcraft International, Inc. ("World Book") acted in violation of the ADEA. Smith alleges that World Book first discriminated against him in 1979 in connection with his termination because of age as a branch manager for the company. Smith also alleges that age discrimination was the cause of World Book's refusal to transfer him to a branch manager position in Knoxville, Tennessee.

This case is now before the Court on defendant's motion to dismiss for failure to state a claim upon which relief can be granted and for lack of subject matter jurisdiction under Rule 12(b) of the Federal Rules of Civil Procedure. However, because defendant has not raised a single argument regarding subject matter juris-

diction,[1] and because both parties have submitted affidavits in support of their positions, the Court will treat the motion as one for summary judgment. F.R.Civ.P. 12(c).

In 1958, Smith was hired by World Book as a sales representative and in 1971 he was promoted to the position of branch manager. Smith alleges that his performance and qualifications equalled or exceeded that of other branch managers but that in spite of his good performance, he was terminated in September, 1979, without an offer of transfer to a comparable position. At the time of his termination, Smith was 47 years old. Smith further alleges that at the time of his termination, World Book refused to transfer him to an available branch manager position in Knoxville, for which he was fully qualified. Smith contends that these actions are part of a pattern and practice of age discrimination engaged in by World Book with regard to its branch managers.

World Book argues that as a matter of law, Smith cannot make out a *prima facie* case of illegal age discrimination on either claim because: (1) when World Book terminated Smith, it replaced him with an individual ten years his senior, and (2) at the time of Smith's transfer request there was no branch manager position available in Knoxville.

Although the Seventh Circuit has not specifically considered what method of analysis is to be used in reviewing complaints brought under the ADEA, other courts have held, and the parties in this case agree, that the standards set forth by the Supreme Court with regard to Title VII cases in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) constitute the guidelines for establishing a *prima facie* case under the ADEA. *Loeb v. Textron, Inc.*, 600 F.2d 1003 (1st Cir. 1979); *Schwager v. Sun Oil Co.*, 591 F.2d 58 (10th Cir. 1979); *Hughes v. Black Hills Power & Light Co.*, 585 F.2d 918 (8th Cir. 1978); *Rodriguez v. Taylor*, 569 F.2d 1231 (3d Cir. 1977); *Marshall v. Goodyear Tire and Rubber Co.*, 554 F.2d 730 (5th Cir. 1977); *Laugesen v. Anaconda Company*, 510 F.2d 307 (6th Cir. 1975). However, because the ADEA is a separate act with its own unique history,[2] and because the *McDonnell Douglas* decision specifically counsels flexibility,[3] it would be improper to apply the *McDonnell Douglas* standards mechanically to all cases arising under the ADEA. Nonetheless, the starting point for this Court's analysis of World Book's motion is found in the language of the *McDonnell Douglas* decision, 411 U.S. at 802, 93 S.Ct. at 1824:

> The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. This may be done by showing (i) that he belongs to a racial

---

**1.** Even if defendant had argued that this Court is without subject matter jurisdiction this argument would not be successful. "Where a complaint claims an invasion of a federal right, the court has jurisdiction to determine whether a claim has been stated. Thus, a dismissal should be made on the merits under Rule 12(b)(6) for failure to state a claim, and not for want of federal subject matter jurisdiction." *Bratton v. Shiffrin*, 440 F.Supp. 1257, 1260 n.6 (N.D.Ill.1977).

**2.** *See Laugesen v. Anaconda Company*, 510 F.2d 307, 312–313 n.4 (6th Cir. 1975).

**3.** In *McDonnell Douglas*, 411 U.S. at 802 n.13, 93 S.Ct. at 1824 n.13, Justice Powell, after setting forth the standard for establishing a prima facie case of racial discrimination in a Title VII action, noted:

> The facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required from respondent is

not necessarily applicable in every respect to differing factual situations.

Moreover, the Supreme Court in *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978), commented further on the rationale underlying the standards established to show prima facie discrimination:

> The central focus of the inquiry in a case such as this is always whether the employer is treating 'some people less favorably than others because of their race, color, religion, sex, or national origin.' (citation omitted). The method suggested in *McDonnell Douglas* for pursuing this inquiry, however, was never intended to be rigid, mechanized or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination.

minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

In determining whether World Book's failure to comply with Smith's request for a transfer to Knoxville was a result of illegal age discrimination, this Court directs its attention to the second *McDonnell Douglas* requirement. In his complaint, Smith alleges that he applied and was qualified for an available branch manager's position in Knoxville. World Book asserts, however, that the position was not available on the date of Smith's application. In support thereof, World Book filed the affidavit of Barton L. Breighner, director of United States and Canadian sales for World Book. Mr. Breighner, who is responsible for personnel actions affecting sales personnel on the branch level, stated that on August 17, 1979, Smith inquired as to the possibility of a transfer to branch manager in World Book's Knoxville office. Mr. Breighner, according to his affidavit, informed Smith that the Knoxville position had been offered to and accepted by Duane Hood on July 31, 1979–nearly three weeks prior to Smith's transfer request.

■ In response to Breighner's affidavit, Smith likewise filed an affidavit regarding the events surrounding his transfer request. However, Smith's affidavit merely confirms Breighner's depiction of the transfer request. Smith does not dispute that the Knoxville branch manager's position was given to Duane Hood prior to Smith's request for the job. It is therefore undisputed that the position to which Smith requested transferral was unavailable at the time of his request. Consequently, it would be impossible for Smith to prove that World Book's failure to transfer him to Knoxville was predicated upon impermissible factors such as age. *Marshall v. Airpax Electronics, Inc.*, 595 F.2d 1043, 1044–45 (5th Cir. 1979). The Court reaches this conclusion, not merely because one of the guidelines established in *McDonnell Douglas* has not been met, but rather because after a careful evaluation of all the uncontroverted facts, it is clear that Smith cannot prove as a matter of law that his failure to be transferred was due to age discrimination. Because Smith has failed to make a *prima facie* case of illegal discrimination, summary judgment is granted to World Book with respect to Smith's claim of illegal failure to transfer.

The facts surrounding Smith's termination provide a more difficult question. World Book argues that because Smith was replaced by a person ten years older than he, as a matter of law, he cannot make out a *prima facie* case of illegal age discrimination under the ADEA. In effect, World Book asks this Court to hold that replacement by a younger employee is a prerequisite for setting forth a *prima facie* case of age discrimination in the context of a claim of unlawful termination. For the reasons detailed below, this Court rejects the unyielding and mechanical test suggested by World Book.

■ World Book does not dispute that Smith has sufficiently alleged the first three elements of a *McDonnell Douglas prima facie* case, in that Smith claims that (1) he is within the age group protected by the ADEA; (2) he was doing satisfactory work; and (3) he was discharged despite the adequacy of his work. It is the fourth requirement that provides the basis for World Book's challenge. That requirement, as stated by the Court in *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824, is:

> that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

While there is some difficulty in applying a standard set in a Title VII hiring case to the present fact situation, there can be no doubt that Smith has met the explicit requirements of *McDonnell Douglas*. World Book does not deny that after Smith's termination, World Book did seek and hire someone of his qualifications for the position of branch manager.

World Book, however, would have this Court read into the *McDonnell Douglas* standard, an implicit requirement that the complainant be replaced by a person younger than the complainant. It is essential to note that there is no language in *McDonnell Douglas* itself to support such a reading. Nonetheless, World Book contends that support for its interpretation can be found in *Schwager v. Sun Oil Company of Pennsylvania*, 591 F.2d 58 (10th Cir. 1979), and *Price v. Maryland Casualty Company*, 561 F.2d 609 (5th Cir. 1977).[4]

While it is true that the court in *Schwager* held that to show a *prima facie* case under the ADEA, one must establish that the position was filled by employees younger than the plaintiff, the court offered no citation of support, nor any explanation for the inclusion of this requirement. In fact, because the plaintiff in *Schwager* met this requirement easily, the court had no need to seriously consider the ramifications of its holding. Nonetheless, the court very carefully rejected the mechanical application of standards now urged by World Book and emphasized that the standards established in its opinion were "merely guidelines and not inflexible, rigid approaches to determine whether a *prima facie* case has been established." 591 F.2d at 61 n.1.[5]

The *Price* decision arises in a very different context from the instant case. Murray Price, a fifty–six year old employee of the Maryland Casualty Company, charged that his employer had discharged him due to age discrimination, arguing that he effectively had been replaced by two employees, age forty–nine and fifty. The trial court reached a verdict against Price, ruling that plaintiff had shown a *prima facie* case but that defendants had adequately rebutted any inference of discrimination on the basis of age.

On appeal, the Fifth Circuit affirmed the trial court holding on the alternative grounds that Price had not shown a *prima facie* case, and even if he had satisfied the *prima facie* requirements, defendant had adequately rebutted them. In so doing, the court articulated its version of the *McDonnell Douglas* standard as applied to age discrimination. The court included a requirement that the claimant show that "he was replaced with a person outside the protected group. . . ." 561 F.2d at 612. *Contra, Loeb v. Textron, Inc.*, 600 F.2d 1003 (1st Cir. 1979). In so doing, the Fifth Circuit created, without citation of authority and without a word of explanation or reasoning, an entirely new dimension to proving a

---

4. Though World Book also relies upon the decisions in *Flowers v. Crouch–Walker Corp.*, 552 F.2d 1277 (7th Cir. 1977), and *Marshall v. Arlene Knitwear, Inc.*, 454 F.Supp. 715 (E.D.N.Y. 1978), such reliance is misplaced. The court in *Flowers* described specific factual claims made by plaintiff in that case, and then ruled that those facts constituted a prima facie case of racial discrimination. One of the facts shown was that after a black employee was discharged, white employees were assigned to perform the same work. It is clear that the court in *Flowers* did not intend to establish immutable rules to govern in Title VII cases, but rather attempted to detail the particular facts which *in that case* did constitute a prima facie showing of discrimination.

Similarly, in *Marshall v. Goodyear Tire & Rubber Co.*, 554 F.2d 730, 735–36 (5th Cir. 1977), and in *Marshall v. Arlene Knitwear, Inc.*, 454 F.Supp. at 724, courts, in describing the facts which were held to constitute a prima facie case of age discrimination, included the fact that plaintiff was succeeded by younger employees. These courts did not hold, however, that such a showing is a prerequisite to proving

a prima facie case of age discrimination. In light of the necessity for a case–by–case approach to a finding of prima facie discrimination dictated by the legislative history of the ADEA and the *McDonnell Douglas* decision, it is a serious mistake to confuse a court's recitation of the particular facts constituting a prima facie showing in one case, with a statement of standards that must be met in all cases.

5. The court went so far as to quote from the legislative history of the ADEA to reinforce its belief that the proof required for a prima facie case of age discrimination will vary depending upon the specific factual situation:

The case–by–case basis should serve as the underlying rule in the administration of the legislation. Too many different types of situations in employment occur for the strict application of general prohibitions and provisions. H.R.Rep.No.805, 90th Cong., 1st Sess. (1967); Reprinted [1967] U.S.Code Cong. & Admin.News, pp. 2213, 2220.

591 F.2d at 61 n.1.

*prima facie* case of age discrimination.[6] This invention of the Fifth Circuit has met with considerable criticism from courts and commentators alike. Larson, Employment Discrimination § 98.53 (1979); *Moore v. Sears, Roebuck and Co.*, 464 F.Supp. 357, 360–61 (N.D.Ga.1979); *Marshall v. Baltimore & Ohio Ry. Co.*, 461 F.Supp. 362, 372 (D.Md.1978); *Polstorff v. Fletcher*, 452 F.Supp. 17 (N.D.Ala.1978).

Interestingly, two of the opinions that criticize the *Price* decision, arise out of district courts in the Fifth Circuit itself. In *Polstorff*, the defendant, citing *Price*, argued that plaintiff had not established a *prima facie* case of age discrimination because plaintiff was not replaced by someone from outside the "protected group."[7] The

court rejected this "mechanical approach" because the *McDonnell Douglas* decision "does not establish an immutable definition of a prima facie case." 452 F.Supp. at 24. The same argument was asserted and rejected in *Moore*, with the court, after a thorough review of Supreme Court and Fifth Circuit opinions, concluding that,

> The applicable case law therefore leads us to reject Sears' insistence on literal application of the *Price* formula as the single test of the plaintiffs' discrimination claims. Common sense leads to the same result, for even an employee (1) whose position is eliminated entirely, or (2) whose position is eliminated but whose duties are filled by others of his age, can still succeed in creating an inference, as

**6.** It is instructive to trace the progression of Fifth Circuit opinions that led up to the *Price* decision. In *Wilson v. Sealtest Foods Division of Kraftco Corp.*, 501 F.2d 84 (5th Cir. 1974), the Fifth Circuit was presented with a complaint arising under the ADEA for the first time. The court held that while the standards established in *McDonnell Douglas* appeared to be applicable to ADEA cases, it was not necessary to rely solely upon *McDonnell Douglas*. The court instead made a fact–specific ruling: "We simply state that in the particular procedural framework within which this case is presented, [review of a directed verdict against plaintiff] a showing that the Appellant was within a protected class, was asked to take early retirement against his will, was doing apparently satisfactory work, and was replaced by a younger person, will not permit dismissal at such an early stage of the trial proceeding." 501 F.2d at 86. As in the cases discussed in note 4, *supra*, the court described what the plaintiff *did* prove to make a prima facie case, not what a plaintiff *must* prove. Indeed, the court carefully attempted to avoid misinterpretation of the above–quoted passage by the addition of a footnote stating: "This is not to say that a mere showing by the plaintiff that he is within a protected group and has been dismissed without explanation without more will require reversal under the same circumstances." *Id.* at n.3.

The issue of prime facie showings under the ADEA next was raised in *Lindsey v. Southwestern Bell Telephone Co.*, 546 F.2d 1123 (5th Cir. 1977). Again, the court was unclear as to whether *McDonnell Douglas* standards should be applied, concluding that plaintiff had failed to make a prima facie showing of age discrimination regardless of whether the *McDonnell Douglas* test was applicable. In describing the *McDonnell Douglas* standards, the court quoted directly from the *McDonnell Douglas* opinion without embellishment. No mention is made of a requirement that the claimant be replaced by a younger person or by a person not in the protected class.

In *Marshall v. Goodyear Tire & Rubber Co.*, 554 F.2d 730, 735 (5th Cir. 1977), the Fifth Circuit noted that considerable confusion had attended opinion discussions of prima facie cases under the ADEA and then forged ahead to add to that confusion. Appellant had asserted that in an ADEA case where plaintiff was fired from his job, plaintiff's prima facie case must include, among other elements, proof that his replacement was a person outside the protected group. In reviewing the appellant's argument the court made two errors. First, the court found that the elements of a prima facie case listed by the appellant "parallel the elements of the prima facie Title VII case discussed in *McDonnell Douglas.*" 554 F.2d at 735. As pointed out above, the *McDonnell Douglas* decision does not include any requirement that plaintiff be replaced by a person outside the protected class. Next, the court stated that, "We have held that these elements constitute a prima facie ADEA case as well." *Id.* In support of this statement, the court cited the *Lindsey* and *Wilson* decisions; yet, contrary to the court's statement, neither of those decisions require that plaintiff show that he was replaced by a person outside the protected class in order to prove a prima facie case under the ADEA. It is this combination of misstatements that helped to create the sandy foundation upon which the *Price* decision was built.

**7.** The protected group includes all persons between forty and seventy years of age. 29 U.S.C. § 631.

conceived in *Furnco,* of discriminatory employment practice.

464 F.Supp. at 363.

This Court concurs with the decisions reached in *Polstorff* and *Moore* in rejecting the concept of a rigid *prima facie* formula. While we conclude that *McDonnell Douglas* provides an appropriate starting point for the analysis of age discrimination cases, it should not be viewed as establishing *per se* rules that all plaintiffs must meet. The Supreme Court has left no doubt that *McDonnell Douglas* was not intended to indicate an exclusive method for proving a claim of discrimination.[8] *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396 (1977).

The facts in this case well illustrate the dangers inherent to the use of a *per se* rule. World Book correctly emphasizes that Smith's replacement was ten years older than Smith. There is no question that this fact will have a significant bearing upon the issue of whether Smith has made a *prima facie* case of discrimination. However, Smith claims, upon information and belief, that his replacement, Betty Sundin, had previously been his supervisor and therefore she effectively was demoted by being placed in Smith's position. This too is a factor that will significantly bear upon the question of a *prima facie* case–but it is a factor that would have to be wholly and incorrectly ignored if this Court were to adopt the *per se* rule urged by World Book.[9] Moreover, the application of a *per se* test would provide employers with an easy method of defeating discrimination suits without defeating discrimination. *See Marshall v. Baltimore & Ohio Ry. Co.,* 461

F.Supp. at 372. The ADEA was not intended to be such a vehicle.

 Having rejected the application of a *per se* rule with respect to Smith's replacement, this Court must address World Book's alternative contention that as a matter of law Smith is incapable of making a *prima facie* case of age discrimination. As explained above, a *prima facie* showing is made when plaintiff alleges facts that raise the inference that an employment decision was probably based upon an impermissible factor such as age. *Furnco Construction Co. v. Waters,* 438 U.S. 567, 577–78, 98 S.Ct. 2943, 2949–2950, 57 L.Ed.2d 957 (1978). However, given the early stage of this proceeding, it is premature to make such a determination. The Court notes that World Book has yet to answer Smith's complaint and that Smith has not as yet been afforded an opportunity to gather statistical information through discovery. Once these activities are concluded, either party may again move for summary judgment.

Accordingly, World Book's motion for summary judgment with respect to Smith's transfer claim is granted; World Book's motion for summary judgment with respect to Smith's claim of illegal termination is denied at this time; and World Book is given 21 days to answer Smith's complaint, with discovery to commence immediately. It is so ordered.

---

**8.** As stated in *Loeb v. Textron, Inc.,* 600 F.2d 1003, 1017 (1st Cir. 1979), "*McDonnell Douglas* points to one, but surely not the only, way of establishing a legally sufficient prima facie case and of organizing and analyzing the evidence in a private discrimination case."

**9.** As stated by the court in *Loeb v. Textron, Inc.,* 600 F.2d at 1013, n.9:

In an age case, the probative value of evidence as to the age of complainant's replacement obviously will depend on complainant's own age and the age difference. Replace-

ment of a 60 year old by a 35 year old or even a 45 year old within the protected class would be more suggestive of discrimination than replacement of a 45 year old by a 42 year old within the protected class or by a 39 year old outside it. Replacement by someone older would suggest no age discrimination but would not disprove it conclusively. The older replacement could have been hired, for example, to ward off a threatened discrimination suit.