Frank L. LOEB, Plaintiff,

v.

TEXTRON, INC., et al., Defendants.

Nos. 78–1340, 78–1364.

United States Court of Appeals,
First Circuit.

Argued Nov. 8, 1978.

Decided June 21, 1979.

Stephen N. Shulman, Washington, D.C., with whom Joseph A. Artabane and Cadwalader, Wickersham & Taft, Washington, D.C., were on brief, for Textron, Inc., et al.

A. Lauriston Parks, Providence, R.I., with whom Dennis J. McCarten and Hanson, Curran & Parks, Providence, R.I., were on brief, for Frank L. Loeb.

Dennis D. Clark, Atty., U. S. Dept. of Labor, Washington, D.C., with whom Carin Ann Clauss, Sol. of Labor, and Donald S. Shire, Associate Sol., Washington, D.C., were on brief, for the Secretary of Labor, amicus curiae.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

Frank L. Loeb brought this action in January 1976, alleging that the defendants (Textron, Textron's Speidel division, and several of its officers) had discharged him in 1975 because of his age, in violation of the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. §§ 621–634. In May 1978 a jury returned a verdict for Loeb. Defendants appeal the judgment of liability, and both parties appeal the court's handling of the remedy.

## FACTS

Loeb was hired by Textron's Speidel division as International Sales Manager on August 23, 1971, when he was 50 years old. This was classified as a "level 7" position and carried an annual salary of $24,000 plus bonuses. As International Sales Manager, Loeb supervised sales in areas that in 1974 accounted for 14.55% of Speidel's total international sales. From 1971 through 1974, Loeb's immediate supervisor, Vanover, Vice-President of International Operations, wrote favorable reports on his performance and recommended that he receive raises; in 1972, 1973 and 1974 he received bonuses of $3,570, $3,443 and $2,279, respectively.

At annual management meetings held in 1973 and 1974, Textron adopted "People Development" as a top priority. This program was designed "to ensure that the corporation would have personnel at all levels of its organization 'to manage our companies in the future.'" Thus one Textron division "began anticipating its people requirements" by breaking down various job categories "by age and length of service to anticipate retirements or obsolescence." Company executives were encouraged to develop "coded and rated organization chart[s]" for "each of the key positions, age (and so, time to retirement), length of service, time on the present assignment and promotability," and to set timetables for "how you plan to prepare for and fill each organizational need—and when." At the 1974 meeting, the Executive Vice-President—Operations reviewed an "Aging" chart of corporate and divisional officers and commented that the Company had "a greater proportion of our combined senior management over 55 than we do under 40. That's a warning."

The events leading to Loeb's discharge began in late 1974. Vanover was transferred to the Engineering Department in response to problems that had developed there; at the same time, Textron reorganized Speidel's International Department. It abolished Vanover's position, placed international manufacturing under a Vice-President for Operations, and placed the international sales staff under a Vice-President for Sales and Marketing, who was to be assisted by a Director of International Sales and Marketing. Defendant Frank Grzelecki, then 37 years old, became Vice-President for Sales and Marketing, and Robert Ford, then 32 years old, became Director and—as a result—Loeb's immediate supervisor. Textron did not consider

Loeb for the Directorship, allegedly because he lacked marketing background.

Ford soon began studying Loeb's performance and taking over some of his responsibilities. He claimed that there were problems with Loeb's work in Puerto Rico, Switzerland and Germany, and moved to discharge Loeb in February 1975. This action was stopped by Speidel's President, who noted that there was a lack of documentation to support Loeb's termination and suggested that Loeb be given specific written assignments, against which his performance could be measured. This was done on March 19, 1975; Loeb's title and duties were taken away, he was made "Area Manager–Latin America" instead, and he was given an assignment listing marketing goals for Latin America. In May, Loeb responded to Ford in a report that Textron asserts indicated that there either was insufficient business to be done in Latin America or that Loeb could not develop such business. In June, Ford fired Loeb on the ground that he could not generate enough business in Latin America to justify his salary, noted "involuntary termination—poor job performance" on his personnel record and told him that there were no other openings in the International Department. Loeb was 54 at that time.

On November 1, 1975, a 34-year-old man named Stein Owre joined Speidel's International Department as "Senior Product Manager–International." Owre had written to Ford in January 1975, shortly before Ford first recommended Loeb's termination, and Ford had interviewed him in Europe in March and April. Between those two interviews Speidel had advertised for a "Senior Product Manager, International" with qualifications that closely paralleled Owre's; Ford had offered Owre the position formally on August 28.

Textron has not used Loeb's former title, "International Sales Manager," for any employee since it was taken from him in March 1975. Loeb's title as "Area Mana-

ger–Latin America" remained unused until January 1978, when it was given to one Joseph Torres, who was then 46 years old and had been functioning as Area Manager–Latin America since Loeb's dismissal. In the two-and-a-half years after Loeb received his March 1975 assignment, Speidel never sold more than $24,000 of goods per year—i. e., goods equivalent in value to Loeb's salary—in the Latin American countries covered by that assignment.

After the close of trial, the court delivered an instruction to the jury that attempted in large measure to track the analysis presented by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), a major decision in the area of private, non-class actions under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e–17. It told the jury that Loeb had to prove a "prima facie case" by showing by a preponderance of the evidence:

"1) That he is within the protected age group, that is, 40 to 65 years; [1]

2) That he was demoted or discharged;

3) That he was replaced by a younger person or persons outside the protected age group; and

4) That he was qualified to do the job."

It instructed that, if Loeb proved these elements, the defendant had "the burden to prove by a fair preponderance of the evidence a legitimate non-discriminatory reason" for its actions; if the jury found that the defendant "was motivated by reasonable factors other than age or [by] good cause," then it was to "further find whether or not the reasonable factors or good cause . . . were in fact a pretext arranged in order to accomplish discrimination against plaintiff because of his age." Finally, the jury was told that the plaintiff had the burden of proving by a preponderance that the defendant's reasons were in fact a pre-

---

1. The Age Discrimination Act has since been amended to extend the upper age limit to age

70. Pub.L. No. 95–256, § 3(a), 92 Stat. 189 (amending 29 U.S.C. § 631).

text.[2] *See McDonnell Douglas,* 411 U.S. at 802–04, 93 S.Ct. 1817.

In the midst of this part of the instruction the court interjected an issue not addressed by *McDonnell Douglas:* the possibility that Textron had "mixed motives" for Loeb's discharge, one of which was age. It said:

> "If you find by a preponderance of the evidence, that Plaintiff's age was one factor in the decision to demote or discharge him, and, Plaintiff's age made a difference in determining whether he was demoted, or retained or discharged, then you must find for Plaintiff . . . . Plaintiff need not prove that his age was the sole factor affecting the decision to demote or discharge him provided he can show that age contributed to or affected the decision to demote or discharge."

**2.** The entire charge was, in relevant part, as follows:

"In this case, Plaintiff must prove what is called a 'prima facie' case. To do this, he must prove:

1) That he is within the protected age group, that is, 40 to 65 years;
2) That he was demoted or discharged;
3) That he was replaced by a younger person or persons outside the protected age group; and
4) That he was qualified to do the job.

"If Plaintiff does not prove a prima facie case by a fair preponderance of the evidence, then your verdict must be for Defendants.

"If you find Plaintiff has proved these four (4) elements of a prima facie case, by a fair preponderance of the evidence, then each Defendant has the burden to prove by a fair preponderance of the evidence a legitimate non-discriminatory reason for his or its actions. That is, that his or its actions were motivated by reasonable factors other than age or were for good cause. If you find that Plaintiff has proved a prima facie case and Defendant has not proved that his or its actions were motivated by reasonable factors other than age or were for good cause, then your verdict must be for Plaintiff.

"If, however, you find that Plaintiff has proved a prima facie case and you also find that Defendant has proved that his or its actions were motivated by reasonable factors other than age or were for good cause, your task is not ended. Although you may find that Defendant was motivated by reasonable factors other than age or for good cause, you must further find whether or not the reasonable factors or good cause which motivated Defendant were in fact, a pretext arranged in order to

The jury returned a verdict of $90,700 for Loeb. In response to a special interrogatory, it found that the defendants' violation of the ADEA had been willful, thus raising the possibility of awarding Loeb liquidated damages under Section 7 of the Act, 29 U.S.C. § 626(b). The district court denied defendants' motions for a directed verdict and for a new trial and entered judgment on the jury award. It assessed an additional $90,700 as liquidated damages and $42,-500 as attorneys' fees, and awarded Loeb $90,000 and a pension commencing at age 70 in lieu of reinstatement.

A multitude of issues are raised by the parties on appeal. Defendants challenge the verdict largely on the ground that the court instructed the jury erroneously. They argue, first, that the principles of *McDonnell Douglas* do not apply to age

accomplish discrimination against Plaintiff because of his age. If you find that Defendant was motivated by reasonable factors other than age or good cause, the Plaintiff has the burden to prove by a fair preponderance of the evidence that the reasonable factors other than age or good cause were in fact a pretext arranged to accomplish discrimination against Plaintiff because of his age. If you find that Plaintiff has proved by a fair preponderance of the evidence that the reasonable factors other than age or good cause were in fact a pretext arranged to accomplish discrimination against Plaintiff because of his age, then your verdict must be for Plaintiff.

"To put it in outline form:

"Plaintiff prevails if:

　1. Plaintiff proves a prima facie case and Defendant does not prove a legitimate non-discriminatory reason, or

　2. Plaintiff proves a prima facie case, and Defendant proves a legitimate non-discriminatory reason, and Plaintiff proves that Defendant's non-discriminatory reason is a pretext.

"Defendant prevails if:

　1. Plaintiff does not prove a prima facie case, or

　2. Plaintiff proves a prima facie case, and Defendant proves a non-discriminatory reason, and Plaintiff fails to prove that Defendant's non-discriminatory reason is a pretext."

The court's repeated language at the end— "motivated by reasonable factors other than age or good cause" was obviously meant, as made clear at the onset, to be understood as "motivated by reasonable factors other than age or [motivated by] good cause."

discrimination cases at all. In the alternative, they argue that the plaintiff failed to prove a prima facie case of discrimination under *McDonnell Douglas* and that the court erroneously interpreted the defendants' burden under *McDonnell Douglas,* to "articulate a legitimate nondiscriminatory reason" for plaintiff's discharge, as being a burden of persuasion. If the burden of persuasion is permitted to shift to defendants, however, they argue that it was error to instruct the jury that Loeb could recover if age was only "a factor," rather than the "determinative factor," in the decision to discharge him.

Even assuming the validity of the verdict, defendants argue that the court's award of liquidated damages was not authorized by the statute and that the court abused its discretion by awarding Loeb payments until age 70 and a pension thereafter. Loeb counters, however, by arguing that he was entitled to reinstatement and that the award of liquidated damages was too low. We reverse and remand for a new trial in accordance with the principles set forth herein.

## INTRODUCTION

This appeal raises questions of first impression in this circuit concerning the correct way to try an age discrimination case brought under 29 U.S.C. §§ 621–634 (ADEA). Our problem would be difficult enough were we simply faced with the question of implementation of the new ADEA statute. It is compounded, however, by the fact that the district court based much of its jury charge on an attempted application of principles in *McDonnell Douglas.* This requires us to determine whether and how *McDonnell Douglas,* a Title VII case involving allegations of racial discrimination in hiring, applies to a case arising under a different statute and involving allegations of discriminatory firing on the basis of age. And, as *McDonnell Douglas* arose from non-jury proceedings, we are faced with the entirely separate but equally troublesome problem of adapting its principles to a jury trial, where responsibilities must be divided between judge and jury.

Because the path is tortuous and, in places, unlit, we map out our journey and some of our destinations in advance:

We begin by analyzing the district court's jury charge. Leaving aside our later conclusion that the full *McDonnell Douglas* formulation should not be recited to the jury, *see* Part I(B)(5), *infra,* we hold that the district court in any event misstated that formulation, both as to the burden on the defendant and as to the elements making up the prima facie case.

We next discuss the more general question of the applicability of *McDonnell Douglas* to age discrimination cases and to jury trials. We conclude that the operative principles behind *McDonnell Douglas* are applicable in age cases as in Title VII cases,[3] but that the *McDonnell Douglas* formula is not to be read in full to the jurors. The formula, moreover, does not set forth immutable guidelines for the decision of all discrimination cases. Rather it is applicable to a greater or lesser degree in varying circumstances; the judge should understand its basis and apply it functionally as circumstances warrant.

After disposing of the *McDonnell Douglas* issue, we address the question whether age must simply be "a factor" or a determinative factor in the employment decision to warrant a finding of discrimination. We conclude that, at least where defendant denies that age was a consideration,[4] the

---

**3.** Other courts have, to one extent or another, used the *McDonnell Douglas* analysis in ADEA cases. *See, e.g., Hughes v. Black Hills Power & Light Co.,* 585 F.2d 918, 919 n.1 (8th Cir. 1978); *Kentroti v. Frontier Air Lines,* 585 F.2d 967, 969 (10th Cir. 1978); *Marshall v. Westinghouse Electric Corp.,* 576 F.2d 588, 590 (5th Cir. 1978); *Rodriguez v. Taylor,* 569 F.2d 1231, 1239 (3d Cir. 1977), *cert. denied,* 436 U.S. 913, 98 S.Ct. 2254, 56 L.Ed.2d 414 (1978); *Marshall*

*v. Arlene Knitwear, Inc.,* 454 F.Supp. 715, 723 (E.D.N.Y.1978); *cf. Laugesen v. Anaconda Co.,* 510 F.2d 307, 312 (6th Cir. 1975) (*McDonnell Douglas* standards may be applied to age discrimination cases but not automatically).

**4.** This case does not involve an explicit age requirement, and does not raise any issues of the burden of proof when an employer asserts

plaintiff must prove that he would not have been discharged "but for" his age—*i.e.,* that age must have been a determinative factor.

Finally, we consider the district court's handling of damages.

## I. *THE McDONNELL DOUGLAS ISSUES*

### A. *The Jury Instructions On Their Face Did Not Correctly Reflect McDonnell Douglas Principles.*

*McDonnell Douglas* involved the Title VII claim of a black civil rights activist who sought re-employment as a mechanic in response to the defendant's job opportunity notice. Complainant was rejected even though he was a mechanic whose qualifications were not disputed and even though the prospective employer continued to seek other mechanics. In that case, the Court said that a Title VII complainant "must carry the initial burden . . . of establishing a prima facie case of racial discrimination," 411 U.S. at 802, 93 S.Ct. at 1824, and that this "may" be done by showing that he "belongs to a racial minority," that "he applied and was qualified for a job for which the employer was seeking applicants," that "despite his qualifications, he was rejected," and that, "after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications," *Id.*

In *McDonnell Douglas,* the Supreme Court held that the complainant had proven the elements of a prima facie case as described. "The burden then must shift to the employer," the Court went on, "to *articulate* some legitimate, nondiscriminatory reason for the employee's rejection. . . [T]his suffices *to discharge petitioner's burden of proof at this stage and to meet respondent's prima facie case of discrimination." Id.* at 802–03, 93 S.Ct. at 1824, (emphasis added). Complainant, however, must then "be afforded a fair opportunity to show that petitioner's stated reason for re-

spondent's rejection was in fact pretext." *Id.* at 804, 93 S.Ct. at 1825.

The mechanics of the burden shifting in *McDonnell Douglas* and the meaning of the requirement that the defendant "*articulate a legitimate nondiscriminatory reason*" for the plaintiff's discharge have caused no little difficulty among courts. Here the district court interpreted *McDonnell Douglas* to require defendants *to prove by a preponderance that their actions "were motivated by reasonable factors other than age or were for good cause."* (Emphasis added.) Just four months earlier, we ourselves stated (incorrectly) that defendants must *"prove absence of discriminatory motive." Sweeney v. Board of Trustees of Keene State College,* 569 F.2d 169, 177 (1st Cir.), *vacated and remanded,* 439 U.S. 24, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978) (emphasis added). Our decision was remanded by the Supreme Court on the ground that "there is a significant distinction between merely 'articulat[ing] some legitimate, nondiscriminatory reason' and 'prov[ing] absence of discriminatory motive.'" 439 U.S. at 25, 99 S.Ct. at 295. The majority and the dissent there agreed that, "the employer's burden is satisfied if he simply '*explains* what he has done' or '*produc[es] evidence* of legitimate nondiscriminatory reasons,'" 439 U.S. at 25 n.2, 99 S.Ct. at 296 (emphasis added); *compare* 439 U.S. at 25, 99 S.Ct. 295 (Stevens, J., dissenting).

In light of the Supreme Court's remand of our decision in *Sweeney,* we conclude that the district court erred by placing too great a burden on defendants. We think it now clear that *McDonnell Douglas* leaves the burden of persuasion at all times with the plaintiff, and that the employer's burden to "articulate" a legitimate, nondiscriminatory reason is not a burden to persuade the trier that he was in fact motivated by that reason and not by a discriminatory one. Rather it is a burden of production—*i.e.,* a burden to *articulate or state* a valid reason,[5] following which the complain-

---

that age is a "bona fide occupational qualification" under 29 U.S.C. § 623.

5. Although the employer has a burden of production rather than of persuasion, "The employer's defense must . . . be designed to

ant must show that the reason so articulated or stated is a mere pretext or "cover-up" for what was in truth a discriminatory purpose.[6] This, indeed, is only logical. If an employer were to *prove* that he was motivated by a legitimate reason, there would be no room left for showing that that reason was a "pretext," as pretext is "a purpose or motive alleged or an appearance assumed in order to cloak the real intention or state of affairs." Webster's Third New International Dictionary (1971). To say, as the court did here, that the defendant must prove that its action *was* based on a legitimate reason *and* that the plaintiff must "then" prove that it was not, is contradictory.

Confusion as to the defendant's burden under *McDonnell Douglas* was created in part by the Supreme Court itself, in *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978). There the Court at one point said, "the burden which shifts to the employer is merely that of *proving* that he based his employment decision on a legitimate consideration . . . ." *Id.* at 577, 98 S.Ct. at 2950

(emphasis added).[7] *Sweeney* leads us to believe, however, that *Furnco's* use of the word "proving" must be understood in light of the fact that,

> "In litigation the only way a defendant can 'articulate' the reason for his action is by adducing evidence that explains what he has done; when an executive takes the witness stand to 'articulate' his reason, the litigant for whom he speaks is thereby proving those reasons."

*Sweeney,* 439 U.S. at 26, 99 S.Ct. at 297 (Stevens, J., dissenting). This conclusion not only seems required by *Sweeney,* it is also most consistent with the fact that the plaintiff must prove that the defendant's reason was a pretext for discrimination, *McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. 1817, *i. e.,* that the defendant's action was *not* based on the reason given.

While the district court's misstatement of the burden of proof was a serious enough error to require a new trial, it was not the only error. The court was also incorrect in instructing that, as part of his prima facie case, Loeb had to prove that

---

meet the prima facie case . . . ," *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 360 n.46, 97 S.Ct. 1843, 1867, 52 L.Ed.2d 396 (1977), and must be sufficient, on its face, to "rebut" or "dispel" the inference of discrimination that arises from proof of the prima facie case. *See McDonnell Douglas,* 411 U.S. at 807, 93 S.Ct. 1817; *Teamsters,* 431 U.S. at 342 n.23, 97 S.Ct. 1843. A passing reference by just one of many witnesses to some deficiency in the plaintiff's job rating, for example, would be insufficient. Nor would it be enough to offer vague, general averments of good faith—a plaintiff cannot be expected to disprove a defendant's reasons unless they have been articulated with some specificity. *Cf. Alexander v. Louisiana,* 405 U.S. 625, 632, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972) (averments of good faith in individual selections cannot dispel prima facie case of systematic discrimination).

**6.** While an employer's judgment or course of action may seem poor or erroneous to outsiders, the relevant question is simply whether the given reason was a pretext for illegal discrimination. The employer's stated legitimate reason must be reasonably articulated and nondiscriminatory, but does not have to be a reason that the judge or jurors would act on or approve. Nor is an employer required to adopt

the policy that will maximize the number of minorities, women, or older persons in his workforce. *See Furnco Construction Corp. v. Waters,* 438 U.S. 567, 576–577, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978). An employer is entitled to make his own policy and business judgments, and may, for example, fire an adequate employee if his reason is to hire one who will be even better, as long as this is not a pretext for discrimination.

The reasonableness of the employer's reasons may of course be probative of whether they are pretexts. The more idiosyncratic or questionable the employer's reason, the easier it will be to expose it as a pretext, if indeed it is one. The jury must understand that its focus is to be on the employer's motivation, however, and not on its business judgment. *See NLRB v. Eastern Smelting & Refining Corp.,* 598 F.2d 666, 670 (1st Cir. 1979).

**7.** Elsewhere, however, the Court said that the prima facie case sustains an inference of discrimination only if defendants' acts are "otherwise unexplained," *Furnco,* 438 U.S. at 577, 98 S.Ct. 2943, and that an employer can *"dispel* the adverse inference from a prima facie showing" by "articulat[ing]" a legitimate reason for its action, *id.* at 578, 98 S.Ct. at 2950 (emphasis added).

"he was replaced by a younger person or person outside the protected age group."[8] The prima facie case described in *McDonnell Douglas* did not include proof that some person outside the protected class was hired in complainant's place.[9] Rather the prima facie case there described is based on the notion that, by ruling out the more obvious job-related reasons for not hiring him, a Title VII complainant can create an inference of some tainted reason, *i.e.,* some discriminatory reason, sufficient to require the employer to articulate a legitimate reason for the complainant's rejection. It is because of this logic that the prima facie case in *McDonnell Douglas* included, in addition to proof that the plaintiff belonged to a racial minority and was rejected for a job for which he applied, proof that there actually was a job opening and that plaintiff was qualified for it. This was made clear by the Supreme Court in *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 358 n.44, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977) and, more recently, in *Furnco:*

> "A prima facie case under *McDonnell Douglas* raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors. See *International Brotherhood of Teamsters v. United States,* supra 431 U.S. [324], at 358 n.44, [97 S.Ct. at 1866, 52 L.Ed.2d 396]. And we are willing to assume this largely because we know from our experience that more often than not people do not act in a totally arbitrary manner, without any underlying reasons, especially in a business setting. Thus, when all legitimate reasons for rejecting an applicant have been eliminated as possible reasons for the employer's actions, it is more likely than not the employer, whom we generally assume acts only with *some* reason, based his decision on an impermissible consideration such as race."

438 U.S. at 577, 98 S.Ct. at 2949–2950.

■■ To apply the above concept i ' the present case, which involves firing, not hiring, the critical elements (beyond being within the protected class, *i. e.,* age 40–65, and fired) must be modified to produce an analogous inference. Complainant would be required to show that he was "qualified" in the sense that he was doing his job well enough to rule out the possibility that he was fired for inadequate job performance, absolute or relative. *See Teamsters,* 431 U.S. at 358 n.44, 97 S.Ct. 1843.[10] He would also have to show that his employer sought a replacement with qualifications similar to his own, thus demonstrating a continued need for the same services and skills.[11] Without proof along these lines, the conceptual underpinnings of *McDonnell Douglas* would not remain recognizable. Proof beyond this, however, is not mandated by *McDonnell Douglas,* and does not fit its

---

8. Defendants argue that they were entitled to a directed verdict because Loeb failed to prove these facts. As such proof was not required, we do not discuss this contention.

9. This is not to say that evidence of the race or age of complainant's replacement may not sometimes be probative of discrimination. In an age case, the probative value of evidence as to the age of complainant's replacement obviously will depend on complainant's own age and the age difference. Replacement of a 60 year old by a 35 year old or even a 45 year old within the protected class would be more suggestive of discrimination than replacement of a 45 year old by a 42 year old within the protected class or by a 39 year old outside it. Replacement by someone older would suggest no age discrimination but would not disprove it conclusively. The older replacement could

have been hired, for example, to ward off a threatened discrimination suit. *Cf. Furnco,* 438 U.S. at 579, 98 S.Ct. 2943 (balanced workforce does not preclude finding of specific act of discrimination); *Rhode Island Minority Caucus, Inc. v. Baronian,* 590 F.2d 372, 375–76 (1st Cir. 1979) (balanced group of voter registrars does not preclude finding of specific act of discrimination).

10. We can assume that, unless the employee's job has been redefined, the fact that he was hired initially indicates that he had the basic qualifications for the job, in terms of degrees, certificates, skills and experience.

11. A replacement need not be sought from outside the company, of course, nor need he be designated formally as such.

conceptual underpinnings as described in *Furnco* and *Teamsters.*[12] A correct statement of the elements of a *McDonnell Douglas* prima facie case, adapted to present circumstances, therefore would have been that Loeb had to prove that he was in the protected age group, that he was performing his job at a level that met his employer's legitimate expectations, that he nevertheless was fired, and that Speidel sought someone to perform the same work after he left.[13]

B. *Use of McDonnell Douglas in ADEA Cases.*

We now turn to defendants' more fundamental objection, that the *McDonnell Douglas* formula has no relevance to age discrimination cases and should not have been used in this case at all.

1. *The Purpose and Limitations of McDonnell Douglas and its Relevance to Age Discrimination Cases.*

Defendants' objection to use of *McDonnell Douglas* in ADEA cases assumes that *McDonnell Douglas* establishes a form of "strict analysis" unwarranted when a complainant alleges that he has been treated unfavorably because of his age, rather than because of "more invidious" factors, such as race or sex. We cannot accept this premise.

The Supreme Court has said that, "The method suggested in *McDonnell Douglas* . . . is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination." *Furnco,* 438 U.S. at 577, 98 S.Ct. at 2949. As such, it addresses two problems that exist in most employment discrimination cases: (1) direct evidence of discrimination is likely to be unavailable, and (2) the employer has the best

access to the reasons that prompted him to fire, reject, discipline or refuse to promote the complainant. To offset, to some degree, these difficulties, *McDonnell Douglas* affirms the right of a complainant to make a prima facie showing of discrimination by establishing that his rejection did not result from "the two most common legitimate reasons"—lack of qualifications or absence of a job opening. *Teamsters,* 431 U.S. at 358, n.44, 97 S.Ct. at 1866; *see Sweeney,* 569 F.2d at 176–77. Proof of the *McDonnell Douglas* -type prima facie case assures the plaintiff his day in court despite the unavailability of direct evidence, and entitles him to an explanation from the defendant-employer for whatever action was taken.

Once an explanation is given, plaintiff then must show that it was not the real reason for his rejection or discharge, but rather a pretext for discrimination. *McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. 1817. This is true even where, as here, the proffered "legitimate reason," poor job performance, disputes one of the elements of the prima facie case (*i.e.,* that plaintiff was performing well)—the ultimate question is not whether defendants' decision to fire or discipline plaintiff reflected an objective factfinder's judgment of plaintiff's abilities, but whether it was unlawfully motivated. *See Teamsters,* 431 U.S. at 335 n.15, 97 S.Ct. 1843. Here again, however, plaintiff may proceed with indirect evidence, as by demonstrating that the reason advanced applied to other employees who did not have plaintiff's "protected" characteristics, but that they were not rejected or fired. *See id.* 411 U.S. at 804–05, 93 S.Ct. 1817.

*McDonnell Douglas,* in short, helps an alleged victim of discrimination identify

---

12. This is not to say that a *McDonnell Douglas* prima facie case is the only possible prima facie case appropriate in a discrimination case. A complainant of requisite age who offered evidence that, when fired, his employer said, "I am firing you solely because I want someone younger," might not need anything more to make out a prima facie showing of discrimination. *See* discussion in Section II(A), and note 18, *infra.*

13. Here, of course, two elements of the *McDonnell Douglas* -type prima facie case, that Loeb was in the protected age group and was fired, were not contested. The record suggests too that the parties may have disputed the "replacement" element only because it was misunderstood.

the reasons he must show did not in fact lead to his discharge or rejection, and assists him in making out his case with circumstantial evidence. It does not relieve him, however, of the burden of persuading the trier of fact that his rejection was a "discriminatory decision," *id.* at 805, 93 S.Ct. 1817. Although the *McDonnell Douglas* prima facie case has a foundation in experience and logic, *Furnco,* 438 U.S. at 577, 98 S.Ct. 2943; *Teamsters,* 431 U.S. at 358, n.44, 97 S.Ct. 1843, its proof is not equivalent to a factual finding of discrimination, *Furnco,* 438 U.S. at 579, 98 S.Ct. 2943. Indeed, the inference of discrimination created by the prima facie case is dispelled once the employer's reason is stated, until and unless the latter is shown to be a pretext, *see id.* at 578, 98 S.Ct. 2943. Thus prima facie proof may entitle the plaintiff to a directed verdict if the defendant fails to meet his burden of production, but not otherwise.[14]

■ Given this understanding of *McDonnell Douglas,* we see no inherent reason why it is any less a "sensible, orderly way to evaluate the evidence" in an age discrimination case than in any other. *McDonnell Douglas* meets a problem of proof that may be present in any case where motivation is in issue, but does not alter the traditional burdens of proof in civil litigation, and is not intended to deflect the factfinder from the central issue of whether the employer was motivated by discriminatory factors.

### 2. *The Statutory History of the ADEA Does Not Preclude Use of McDonnell Douglas.*

Defendants argue that Congress evidenced an intent to avoid the "strict, formal approach" of *McDonnell Douglas* when it chose to deal with age discrimination in a

separate statute, rather than in an amendment to Title VII, and to provide explicitly that it shall not be unlawful, "to discharge or otherwise discipline an individual for good cause," 29 U.S.C. § 623(f)(3), and that differential treatment of older persons is not prohibited "where the differentiation is based on reasonable factors other than age," 29 U.S.C. § 623(f)(1).

We are not convinced. As the Supreme Court has noted, "the prohibitions of the ADEA were derived *in haec verba* from Title VII." *Lorillard v. Pons,* 434 U.S. 575, 584, 98 S.Ct. 866, 872, 55 L.Ed.2d 40 (1978); *e. g., compare* 42 U.S.C. § 2000e–2(a)(2) with 29 U.S.C. § 623(a)(2). "There are important similarities between the two statutes . . . both in their aims—the elimination of discrimination from the workplace—and in their substantive provisions." *Lorillard,* 434 U.S. at 584, 98 S.Ct. at 872. Thus one naturally might expect to use the same methods and burdens of proof under the ADEA as under Title VII. Nothing in either the ADEA or its legislative history indicates a different conclusion.

■ The mere fact that Congress chose to pass a separate statute rather than to amend Title VII does not imply that age discrimination was intended to be subject to different standards and methods of proof than race or sex discrimination. Nor is defendants' position supported by the provisions in the ADEA that find no parallel in Title VII. The first of these, 29 U.S.C. § 623(f)(3), protecting an employer's right to act for good cause, expresses a principle equally applicable in Title VII cases—a fact evidenced by the *McDonnell Douglas* case itself.[15] The second provision, that older persons may be treated differently for reasons other than age, 29 U.S.C. § 623(f)(1),

---

**14.** Although the Supreme Court has never discussed explicitly the significance of the prima facie case after the employer articulates a legitimate reason, we may assume that the evidence used to establish the prima facie case remains relevant, and can help sustain a verdict for the plaintiff if the employer's reason is discredited, but that any other evidence bearing on motive should also be considered. *See Furnco,* 438 U.S. at 580, 98 S.Ct. 2943.

**15.** In *McDonnell Douglas,* it will be remembered, the defendant was entitled to reject the plaintiff because of his illegal activities, unless the plaintiff shouldered the burden of establishing that that reason was a pretext for race discrimination. 411 U.S. at 803–05, 93 S.Ct. 1817.

also does not repudiate the *McDonnell Douglas* approach. In § 623(f)(1), to be sure, Congress made plain that the age statute was not meant to prohibit employment decisions based on factors that sometimes accompany advancing age, such as declining health or diminished vigor and competence. But as *McDonnell Douglas* is merely "a sensible, orderly way to evaluate the evidence in light of common experience," *Furnco,* 438 U.S. at 577, 98 S.Ct. at 2949, it affords ample scope for the operation of this provision.

### 3. *McDonnell Douglas is Adaptable to a Jury Trial.*

Defendants argue that the *McDonnell Douglas* rules for the "order and allocation of proof" should not be used in ADEA cases because they cannot be adapted to trials before juries. They contend that a *McDonnell Douglas* charge will confuse the jurors and that use of the shifting burdens will make it difficult to dispose of motions for directed verdicts.

While of some moment, these points take an unnecessarily literal view of what use of *McDonnell Douglas* in a jury setting entails. We cannot quarrel with the fact that the subtleties of *McDonnell Douglas* are confusing—as discussed in Part I(A) of this opinion, the "prima facie case," "burden of persuasion," and the shifting "burden of production" have caused considerable difficulty for judges of all levels. *McDonnell Douglas* was not written as a prospective jury charge; to read its technical aspects to a jury, as was done here, will add little to the juror's understanding of the case and, even worse, may lead jurors to abandon their own judgment and to seize upon poorly understood legalisms to decide the ultimate question of discrimination. Since the advantages of trial by jury lie in utilization of the jurors' common sense, we would have serious reservations about using *McDonnell Douglas* if doing so meant engulfing a lay jury in the legal niceties discussed in this opinion.

But we do not equate use of *McDonnell Douglas* with a requirement that the full formulation be read *in haec verba* to the jury. *McDonnell Douglas* is to a large extent an analytical framework enunciated *post hoc,* in light of a given set of facts, to give judges a method of organizing evidence and assigning the burdens of production and persuasion in a discrimination case. In light of this and the fact that the defendants' burden is one of production rather than of persuasion, only the factual determinations necessary to the underlying rationale of *McDonnell Douglas* need be made by the jury—the burden-shifting can and should be monitored by the judge.[16] Moreover, the term "prima facie case" need never be mentioned to the jurors; as we indicate in the following section, *McDonnell Douglas* should be used to identify the important factual issues, and these can be set out in the charge, or in special questions, divorced from legal jargon.

Nor does use of *McDonnell Douglas,* as we understand it, pose any real, as opposed to theoretical, difficulty for disposing of motions for directed verdicts in jury trials. Normally the plaintiff will know ahead of trial what reason the defendant is relying on, and the usual order of trial, with plaintiff putting all of his evidence in first, will suffice. If defendant then moves for a directed verdict, the judge will be able to determine whether enough evidence has been introduced to allow the jury to find each disputed element of the prima. facie case and that defendants' reason is a pretext. As the defendants' burden is not one of persuasion, *McDonnell Douglas* creates no impediment to ruling on this motion before the defendant has put on his defense.

### 4. *McDonnell Douglas is Not an Inflexible Formula.*

While we conclude that *McDonnell Douglas* provides an appropriate and

---

**16.** In the unlikely event that there is a dispute over whether the employer has met his burden of production, it will be for the judge to decide whether defendant has stated a legitimate reason with such specificity as to require plaintiff to prove it to be a pretext. *See* notes 5 and 6, *supra.*

workable formula for the trial of age discrimination cases, it should not be used inflexibly as a vehicle for organizing evidence or presenting a case to a jury. Above all, it should not be viewed as providing a format into which all cases of discrimination must somehow fit. The Supreme Court has made it abundantly clear that *McDonnell Douglas* was intended to be neither "rigid, mechanized, or ritualistic," *Furnco,* 438 U.S. at 577, 98 S.Ct. 2943, nor the exclusive method for proving a claim of discrimination, *Teamsters,* 431 U.S. at 358, 97 S.Ct. 1843. In *McDonnell Douglas* itself the Court said that a Title VII complainant "*must* carry the initial burden of . . . establishing a prima facie case of racial discrimination," but went on to say that this "may" (not "must") be done by proving the facts there described. 411 U.S. at 802 & n.13, 93 S.Ct. at 1824 (emphasis supplied). In keeping with this flexible approach, the Supreme Court has held that a prima facie showing of discrimination can be made in a class action by showing discriminatory hiring patterns and practices. *Teamsters,* 431 U.S at 359, 97 S.Ct. 1843; *Franks v. Bowman Transportation Corp.,* 424 U.S. 747, 772, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976).[17] We think too that an individual complainant in some cases may be entitled to his day in court without having proven each element of the *McDonnell Douglas* prima facie case—as, for example, where he has presented direct evidence of discrimination or circumstantial evidence (other than the

*McDonnell Douglas* elements) that supports an inference of discrimination. In short, *McDonnell Douglas* points to one, but surely not the only, way of establishing a legally sufficient prima facie case[18] and of organizing and analyzing the evidence in a private discrimination case.

### 5. Utilization of McDonnell Douglas in the Jury Instruction.

We cannot formulate a charge that should be given in every ADEA case, nor would it be appropriate, in advance of the new trial, to indicate what charge should be given in the present case. We can state, however, some flexible guidelines and give some general directions for use by the district court.

The central issue, which the court must put directly to the jury, is whether or not plaintiff was discharged "because of his age," 29 U.S.C. § 623. We emphasize this obvious point lest technicalities of the kind addressed in this opinion become unduly intrusive, and discourage juries from relying on their common sense.

Whether the jury is also instructed that the plaintiff must establish the four elements of the *McDonnell Douglas*-type prima facie case (properly tailored to the circumstances) and that the employer's reason is a pretext, will depend on whether the plaintiff's age discrimination

---

17. In a class action, proof of a pattern and practice of discrimination shifts to the defendant the burden of showing that individual members of the class were not the victims of discrimination. *Teamsters,* 431 U.S. at 359–62, 97 S.Ct. 1843. In that situation, defendant's burden becomes one of persuasion, not merely production. Whether in a non-class action, proof of a prima facie case different from the *McDonnell Douglas* elements would require the defendant to do something other than produce a "legitimate reason" is a matter we need not decide now.

18. That *McDonnell Douglas* is not a formulation for application in all private discrimination cases is further indicated by the Supreme Court's position in *Furnco,* that the prima facie case consists of proof of facts that, absent other explanation by the employer, make it

"more likely than not" that a discriminatory motive was at work. *Furnco,* 438 U.S. at 577, 98 S.Ct. 2943. In view of the fact that the Court has never passed on the viability of the particular elements of the *McDonnell Douglas* prima facie case outside the factory hiring setting, we caution against automatic reliance on those elements when the employment setting is such that their proof does not make discrimination a probability. For example, if a qualified black were turned down for a job for which there were 100 applicants for every opening and the practice, rather than being to hire the first qualified applicant who appeared, was to choose on the basis of qualifications, recommendations and subjective impressions gleaned from an interview, it would hardly seem "more likely than not" that the applicant was rejected because of race. *Compare* note 12, *supra.*

claim is provable primarily in classic *McDonnell Douglas* terms.[19] If the principle ingredients of plaintiff's case are inferences that are to be derived from the underpinnings of the *McDonnell Douglas* -type prima facie case, the jury should be asked to make these findings. That is, elements fashioned from those in the *McDonnell Douglas* prima facie case should be defined in the charge, and the jury should be told that, in order to prevail, the plaintiff must prove each such element (if disputed) and also that defendant's stated reason for the discharge was a pretext.[20] In order that this instruction relate meaningfully to the ultimate issue of age discrimination, it should be accompanied by an explanation that the reason for discharge assigned by the employer is one for which he was entitled to discharge plaintiff,[21] and that it dispels any inference that the discharge was improper unless the jury finds it to have been a pretext, *i. e.,* a cover-up for age discrimination. The jury should be told that, if it finds all the disputed elements and that defendant's reason is a pretext, it would be warranted in finding for the plaintiff on the ultimate issue of age discrimination.[22]

While the above instructions would fit a "classic" or "pure" *McDonnell Douglas* paradigm, it is obvious that most cases will not come neatly packaged in that form. At least two other types of cases seem likely. One is a case which simply does not fit the mold of the *McDonnell Douglas* formula, as where plaintiff's evidence of discrimination is significantly different (for example, where plaintiff relies chiefly upon direct evidence of discriminatory motive in a let-ter or on an admission from defendant). The court should not force a case into a *McDonnell Douglas* format if to do so will merely divert the jury from the real issues; rather it should use its best judgment as to the proper organization of the evidence and the charge. In cases of this type, the best charge may simply be one that emphasizes that plaintiff must prove, by a preponderance of the evidence, that he was discharged because of his age—with adequate explanation of the meaning of the age statute, the determinative role age must have played, etc., *see infra* and Part II, *infra.*

Another case would be one in which proof of the *McDonnell Douglas* elements is a significant part of plaintiff's total evidence, but where there is also other evidence, direct or circumstantial, that might support an inference of discrimination. In the present case, for example, there were company documents that might be interpreted as indicating a preference for younger employees, although there apparently was no direct evidence that Loeb in particular was fired because of age.[23] Here the district court will again have to exercise its judgment. Strict adherence to *McDonnell Douglas,* with instructions as to all elements of the particular prima facie case there described, may not be required. If, for example, there is substantial other evidence to warrant a finding of discrimination, it may be superfluous to tell the jury that it must find each element of the prima facie case. Rather, as in the previous case, the question of discrimination can be put more directly and simply.

---

**19.** By this we mean a case in which the principal evidence of discrimination rests on the facts that plaintiff was discharged from an ongoing position despite the fact that he allegedly was fully qualified and performing well, and on an attempt to discredit the defendant's tendered reason as being a pretext.·

**20.** This assumes, of course, that defendant has stated a sufficient reason to meet his burden of production. If not, plaintiff need only prove the elements of the prima facie case to win, and the court should so charge.

**21.** As noted earlier, it is for the judge to determine whether defendant has articulated a legitimate reason for its actions. *See* notes 5, 6, and 16, *supra.* An affirmative finding necessarily implies that defendant could act for the reason advanced.

**22.** *See* note 14, *supra,* and accompanying text.

**23.** We use this merely as an example, and do not mean to predetermine the charge to be given in the present case on remand. This will be for the judge to decide, in light of the evidence presented and the issues that emerge.

If either party insists that proof of one or more disputed facts related to the *McDonnell Douglas*-type prima facie case is required, however, the court may wish to ask the jury to answer separately whether that fact has been proven in order to minimize the need for a new trial should proof of such fact be ruled essential on appeal. At least until the Supreme Court further clarifies when proof along the lines of the prima facie case in *McDonnell Douglas* is required, we would suggest that, unless the parties themselves agree otherwise, the court depart only cautiously from the general *McDonnell Douglas* framework in this third type of case.

Whatever the role of *McDonnell Douglas* in the particular case, we strongly encourage the court to go beyond the bare outlines of the issues mentioned here, and to provide the jury with a helpful and meaningful explanation of the relevance of the evidence introduced and of the interests of the parties. It would be useful to discuss the policies of the Age Discrimination Act and the plaintiff's rights thereunder, as the court did here to some extent. The court should also, especially when a management level job is involved, explain that an employer is entitled to make its own subjective business judgments, however misguided they may appear to the jury, and to fire an employee for any reason that is not discriminatory.[24]

## II. *THE MIXED MOTIVE INSTRUCTION*

We now turn to that portion of the charge in which the court said that Loeb did not have to prove that age was the "sole factor" in the decision to discharge him, and that he could recover simply by proving that age was one factor that "contributed to or affected the decision." This touches

on a situation not addressed by *McDonnell Douglas*: the possibility that defendants were motivated by both legal and discriminatory motives.

■ Plaintiff's brief apparently concedes that he was required to prove that age was the determining factor, but argues that this was conveyed by instructing that age had to have "made a difference." We agree with defendants, however, that the court's statement was inadequate to convey to the jury the legal standard it should follow. To find that age was a factor that affected the decision is not equivalent to finding that age was a determinative factor, yet proof that it was a determinative factor is, as both parties recognize, essential to recovery under the ADEA.[25]

■ We do not quarrel with the court's statement that age did not have to be the sole factor motivating defendants to act; we do think, however, that the court should have instructed the jury that for plaintiff to prevail he had to prove by a preponderance of the evidence that his age was the "determining factor" in his discharge in the sense that, "but for" his employer's motive to discriminate against him because of age, he would not have been discharged. *See McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273, 282 n.10, 96 S.Ct. 2574, 49 L.Ed.2d 493; *Fisher v. Flynn*, 598 F.2d 663 (1st Cir. 1979) (Title VII plaintiff must prove "but for" causation); *cf. Givhan v. Western Line Consolidated School District*, 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed. 2d 619 (1979); *Mt. Healthy City Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Rosaly v. Ignacio*, 593 F.2d 145 (1st Cir. 1979) (employers who considered protected expression in employment decisions can prevail by showing

24. *See* note 6, *supra; NLRB v. Eastern Smelting and Refining Corp.*, 598 F.2d 666, 670, 673 (1st Cir. 1979).

25. The ADEA makes it unlawful to take an adverse employment action "because of" a worker's age, 29 U.S.C. § 623, and its remedial provisions are directed at making whole workers who have suffered violations of the Act, 29

U.S.C. § 626, thus evidencing an intent to assist workers who would have been employed "but for" age discrimination. The Labor Department's regulations, 29 C.F.R. § 860.103(c), indicate that the statute was intended to ensure that age was not "a determining factor." *See Mastie v. Great Lakes Steel Corp.*, 424 F.Supp. 1299, 1321 (E.D.Mich.1976).

same decision would have been reached absent such consideration); *NLRB v. Eastern Smelting and Refining Corp.*, 598 F.2d 666 (1st Cir. 1979) (employers who consider protected union activity can defend by showing same decision would have been reached absent such consideration).

## III. *DAMAGES*

Although this case must be remanded for a new trial, the trial court's damages award raises several legal issues that we address, in the event they will recur.

### A. *Liquidated Damages*

The ADEA provides that, "liquidated damages shall be payable only in cases of willful violations of this chapter." 29 U.S.C. § 626(b). The trial court here awarded liquidated damages on the strength of the jury's specific finding that Textron's violation had been willful.

The ADEA also incorporates the enforcement provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 216, 217, 29 U.S.C. § 626(b). These two sections of the FLSA have been amended by Section 11 of the Portal-to-Portal Pay Act, 29 U.S.C. § 260. Defendants argue that Section 11 therefore also is incorporated by reference into the ADEA.[26] That section provides that the court, in its discretion, may award no liquidated damages,

"if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds

for believing that his act or omission was not a violation of the Fair Labor Standards Act . . . ."

Defendants go on to argue that liquidated damages were awarded improperly here, as there was no specific finding that they had not acted in "good faith."

Leaving aside the obvious, that a finding of "willfulness" would seem to preclude a finding of "good faith,"[27] we do not agree that a specific finding as to defendants' good faith under Section 11 of the Portal-to-Portal Act is required before liquidated damages may be awarded in an ADEA case. The Supreme Court, in comparing the ADEA and the FLSA in *Lorillard v. Pons, supra,* read the ADEA to permit liquidated damages awards where an ADEA violation is "willful," 434 U.S. at 581, 98 S.Ct. 866, and noted that,

"Although § 7(e) of the ADEA, 29 U.S.C. § 626(e), expressly incorporates §§ 6 and 10 of the Portal-to-Portal Pay Act, 29 U.S.C. §§ 255 and 259, the ADEA does not make any reference to § 11, 29 U.S.C. § 260. . . ."

434 U.S. at 581–82 n.8, 98 S.Ct. at 870. This selectivity is strong evidence that Congress did not intend to graft Section 11 onto the ADEA. *See id.* at 582, 98 S.Ct. 866. The reason is clear: under 29 U.S.C. § 216(b), standing alone, liquidated damages must be awarded once a violation is shown. Section 11 mitigates this result in FLSA cases. *Id.* at 581 n.8, 98 S.Ct. 866. In ADEA cases, the "willfulness" test serves the same function and renders Section 11 superfluous.[28]

---

26. At argument, defendants suggested that the courts of appeals were unanimous on the question of the applicability of § 11 of the Portal-to-Portal Pay Act, 29 U.S.C. § 260, to the ADEA. In their brief, however, we are cited to only one circuit court decision, *Hays v. Republic Steel Corp.*, 531 F.2d 1307, 1309–10 (5th Cir. 1976), which so holds. Our own research has turned up no other circuit court decision on the issue, although a district court decision, *Combes v. Griffin Television, Inc.*, 421 F.Supp. 841, 844–45 (W.D.Okl.1976), is in accord with defendants' position. Several district courts have held that § 11 of the Portal-to-Portal Pay Act, 29 U.S.C. § 260, ·does *not* apply to the question of liquidated damages under the ADEA. *Fellows v. Medford Corp.*, 431 F.Supp. 199, 201 (D.Or.

1977); *Rechsteiner v. Madison Fund, Inc.*, 75 F.R.D. 499, 504–05 (D.Del.1977); *Cleverly v. Western Electric Co.*, 69 F.R.D. 348, 352 (W.D. Mo.1975).

27. "An act is done 'willfully' if done voluntarily and intentionally, and with the specific intent to do something the law forbids; that is to say, with bad purpose either to disobey or to disregard the law." E. Devitt & C. Blackmar, *Federal Jury Practice and Instructions* § 14.06, at 384 (3d ed. 1977).

28. Congress in its recent amendments to the ADEA highlighted the "willful" test as the standard for imposing liquidated damages: "[The ADEA] includes liquidated damages (calculated

## B. Pension Benefits and Damages in Lieu of Reinstatement

The trial court here decided that reinstatement would be inappropriate. In lieu thereof, and in addition to the clearly authorized awards of back pay and liquidated damages, it ordered Textron to make gradually decreasing yearly payments totalling $90,000 [29] until age 70, and then to begin paying Loeb a lifetime pension.[30] Although Loeb had worked for Textron for only four of the ten years required for rights to vest under Textron's pension plan, the court ordered that this pension award be computed on the basis of ten years continuous employment, with the last five years at an annual compensation of $25,326 (Loeb's salary at the time of his termination). Defendants object to both the pension award and to the payments in lieu of reinstatement.

■■ An award of pension benefits is plainly authorized under the ADEA. Congress intended that the calculation of "amounts owing" to a prevailing plaintiff include "items of pecuniary or economic loss such as wages, fringe, and other job-related benefits." H.Conf.Rep.No.95–950, 95th Cong., 2d Sess. 13, reprinted in [1978] U.S. Code Cong. & Admin. News pp. 528, 535. Pension benefits are part of an individual's compensation and, like an award of back pay, should be awarded under 29 U.S.C. § 626(b). If a prevailing plaintiff is returned to the defendant's employment, this award will consist of payments to the pension fund on plaintiff's behalf, bringing plaintiff's pension interest to the level it would have reached absent discrimination.

■■ When reinstatement is not ordered, any pension benefits due a prevailing plaintiff normally should be liquidated as of the date damages are settled, see Monroe v. Penn-Dixie Cement Corp., 335 F.Supp. 231, 235 (N.D.Ga.1971), and should approximate the present discounted value of plaintiff's interest. Just as with back pay, the award should be computed as if plaintiff had been employed until the date damages are settled. Where the time from plaintiff's initial employment until that date does not meet the employer's vesting requirements, some pension award may still be appropriate—an employer need not be allowed to stand on requirements that plaintiff cannot meet because of the employer's own wrongful acts. In such cases, the district court will have to exercise its discretion carefully. At the least, a plaintiff will be entitled to whatever would have been paid into the pension fund on his behalf. At most, he will be entitled to be treated as a vested employee and to receive a pension award based on employment from when he was first hired until damages are settled or on the minimum vesting period. This is a matter of some technicality, however, and one that we leave largely to the trial court's discretion.

A more difficult question is raised by the award of payments in lieu of reinstatement. Defendants argue that the court abused its

as an amount equal to the pecuniary loss) which compensate the aggrieved party for non-pecuniary losses arising out of a *willful* violation of the ADEA." H.Conf.Rep.No.95–950, 95th Cong., 2d Sess. 13 (1978), reprinted in [1978] U.S. Code Cong. & Admin. News pp. 528, 535 (emphasis added).

29. These payments would have extended over twelve years, and were conditioned on plaintiff's survival and Textron's continuing in business. We find nothing in the record to anchor the amounts that the court arrived at to be paid each year. Plaintiff's expert witness, Professor Rohr, testified that were plaintiff reinstated, he could reasonably expect to receive a total of $526,892 in total compensation, including salary, bonuses and stock savings contributions. The district court did not explain the basis for the figures it used and we do not know how it arrived at them. The total of $90,000 has no relation to the testimony of Professor Rohr or to the discounted value of his estimates.

30. Plaintiff's attorneys also were awarded $42,500 under the Civil Rights Attorney's Fees Award Act of 1976. 42 U.S.C. § 1988. See also 29 U.S.C. § 216(b). The district court computed the award following the guidelines we adopted in King v. Greenblatt, 560 F.2d 1024 (1st Cir. 1977). This procedure was without error. Since a new trial is necessary, however, we cannot say at this time that plaintiff is the prevailing party. See Nadeau v. Helgemoe, 581 F.2d 275, 278 (1st Cir. 1978). Final resolution of this issue must await the outcome of the new trial.

discretion by making this award; they argue that reinstatement is a discretionary remedy and that it is virtually unprecedented to award payments when reinstatement is found to be inappropriate.[31] Plaintiff argues, on the other hand, that he should have been reinstated. Neither party, however, has addressed the relevant issues in any meaningful way; lacking the benefit of adequate briefing on this matter, we confine ourselves to noting the crucial questions to be considered before any such award is made, and to offering some tentative answers. *See Vazquez v. Eastern Airlines, Inc.,* 579 F.2d 107, 112 (1st Cir. 1978). Should Loeb prevail on remand, these questions should be given more thorough consideration by the district court.

The ADEA damages section provides that,

"In any action brought to enforce this chapter the court shall have jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter, including without limitation judgments compelling employment, reinstatement or promotion, or enforcing the liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation,"

29 U.S.C. § 626(b). While this language is expansive, we have noted previously that it is limited for the most part by the remedies available under the FLSA, *Vazquez, supra,* 579 F.2d at 109; *see* 29 U.S.C. § 626(b); *Lorillard v. Pons, supra,* 434 U.S. at 582, 98 S.Ct. 866; 113 Cong.Rec. 31254 (1967),[32] *but see* 29 U.S.C. § 626(b); and thus have held that damages for pain and suffering are not available in ADEA suits because they are

not available under the FLSA, except to the extent that they are encompassed by liquidated damages, *Vazquez,* 579 F.2d at 110–11 & n.3. On the other hand, the Supreme Court has said that courts generally have power "to provide complete relief in light of the statutory purposes" of the FLSA, *Mitchell v. Robert De Mario Jewelry, Inc.,* 361 U.S. 288, 291–92, 80 S.Ct. 332, 335, 4 L.Ed.2d 323 (1960).

Given these principles, three questions are raised by the present case: First, what standards must govern the district court in deciding whether to grant or deny reinstatement to a prevailing plaintiff? *See generally Albemarle Paper Co. v. Moody,* 422 U.S. 405, 415–22, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). Second, assuming that reinstatement is properly denied, are damages in lieu thereof authorized or prohibited under the FLSA; does the legislative history of the ADEA counsel any different result? Finally, if such damages are available, what standards should govern the district court in deciding what amount, if any, to award?

To answer these questions, should they need to be addressed after the new trial, the district court should examine, *inter alia,* the traditional equitable powers of the federal courts [33] and the remedies available under the FLSA. A relevant starting point may be 29 U.S.C. § 215(a)(3), which prohibits the retaliatory discharge of employees and is the FLSA provision most analogous to the ADEA's prohibition against discriminatory discharges. There appear to be only a limited number of cases decided under this section, with some, but very limited,

---

**31.** Defendants state that substitute money judgments have never been awarded in an ADEA case, and have been awarded in limited amounts in only two Title VII cases, *Hyland v. Kenner Products Co.,* 13 E.P.D. ¶ 11,427 (S.D. Ohio 1976) (six month's pay), and *E.E.O.C. v. Kallir, Philips, Ross, Inc.,* 420 F.Supp. 919 (S.D. N.Y.1976) (one year's pay), *aff'd mem.,* 559 F.2d 1203 (2d Cir.), *cert. denied,* 434 U.S. 920, 98 S.Ct. 395, 54 L.Ed.2d 277 (1977).

**32.** Senator Javits, a floor leader·for the ADEA, stated: "The enforcement techniques provided by [the ADEA] are directly analogous to those

available under the Fair Labor Standards Act; in fact, [the ADEA] incorporates by reference, to the greatest extent possible, the provisions of the Fair Labor Standards Act." 113 Cong. Rec. 31254 (1967).

**33.** We would think that damages in lieu of reinstatement, unlike payments due as back wages and treated as unpaid minimum wages, if proper at all, would constitute an equitable rather than a legal remedy. *See Lorillard v. Pons,* 434 U.S. 575, 583 & n.11, 584, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978).

precedent for awards in lieu of reinstatement thereunder. A voluntary payment of $100 was made by the defendant in *Wirtz v. Atlas Roofing Manufacturing Co.*, 377 F.2d 112, 115 n.5 (5th Cir. 1967), and the question of payments in lieu of reinstatement was addressed directly in *Goldberg v. Bama Manufacturing Corp.*, 302 F.2d 152 (5th Cir. 1962). There the Fifth Circuit, having held that the plaintiff had been discriminatorily discharged but was not entitled to reinstatement, said that he was entitled to back pay and that the trial court, if it chose, could award some damages in lieu of reinstatement. 302 F.2d at 156–57.

The Fifth Circuit's suggestion of damages in lieu of reinstatement was based in part on a statement the Supreme Court quoted with approval in *Robert De Mario Jewelry, supra* :

> "Unless otherwise provided by statute, all the inherent equitable powers of the District Court are available for the proper and complete exercise of that jurisdiction. And since the public interest is involved in a proceeding of this nature, those equitable powers assume an even broader and more flexible character than when only a private controversy is at stake. * * * [T]he court may go beyond the matters immediately underlying its equitable jurisdiction * * * and give whatever other relief may be necessary under the circumstances,"

361 U.S. at 291, 80 S.Ct. at 335, *quoting Porter v. Warner Holding Co.*, 328 U.S. 395, 398, 66 S.Ct. 1086, 90 L.Ed. 1332 (1946). *Wirtz*, 302 F.2d at 157 n.3. The Supreme Court's endorsement of broad equitable relief in that case must be taken with caution, however. The Court has never been confronted with the issue of damages in lieu of

reinstatement and, undoubtedly because of the difficulty of ascertaining future damages, there does not appear to be significant authority for such awards by "equity courts," except perhaps in cases involving the breach of employment contracts of specified duration.[34] Nor did the Court in *De Mario* or the Fifth Circuit in *Goldberg* discuss the legislative history of the FLSA as it bore on this particular issue. Further, in the few Title VII and FLSA cases in which payments in lieu of reinstatement have been made, the amounts have been relatively small and have been designed to assist plaintiff during the period in which he can be expected to find other employment. *Atlas Roofing, supra*, 377 F.2d at 115 n.5 and cases cited in note 31, *supra*. The reasons for this approach are clear: First, payments in lieu of reinstatement are payments for services not rendered. Second, any assessment of what an individual might have earned had he been reinstated usually is highly speculative,[35] given the possibilities of promotions or legitimate demotions or terminations. Assuming, without in any way deciding, that a monetary award may be made in lieu of reinstatement, we suspect that both continuing payments and substantial awards calculated, for example, on the basis of life expectancy would be inappropriate. For the time being, however, we leave all of these questions open for initial consideration by the district court, if they surface again after a new trial.

*The judgment is vacated and the case remanded for a new trial.*

BOWNES, Circuit Judge (concurring and dissenting).

Because of errors made by the district judge in instructing the jury, I agree that

---

**34.** Under traditional principles of contract law, courts normally do not enforce employment contracts with orders for specific performance. An employment contract may be enforced for its duration, however, as by ordering the employer to pay an unlawfully discharged employee the difference between his wages due under the contract until its term expires and the amount, if any, he is earning in a different job. D. Dobbs, *Law of Remedies*, § 12.25, at 924–25 (1973).

**35.** We do not necessarily equate damages in lieu of reinstatement with liquidated damages, which are intended to cover damages that are difficult to ascertain. Nevertheless, where the value of reinstatement is highly speculative, the availability of a substantial liquidated damages award under the ADEA may be a proper consideration in denying additional damages in lieu of reinstatement.

the case must be reversed and remanded. Since I do not fully concur with certain aspects of the majority opinion, I set forth my own views.

## I.

My overriding concern is that the majority opinion may be read as an attempt to dilute the force of *McDonnell Douglas* in discrimination cases. That case has been the lodestar, continually looked to by the Supreme Court in this area. *See, e. g., Franks v. Bowman,* 424 U.S. 747, 772, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976); *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977); *United Air Lines v. McMann,* 434 U.S. 192, 98 S.Ct. 444, 54 L.Ed.2d 402 (1977); *Lorillard v. Pons,* 434 U.S. 575, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978); *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978). *McDonnell Douglas* first established the requirements of a prima facie case, emphasizing that the format therein described was appropriate to accommodate both the strong policy reasons for allowing plaintiff to proceed on the basis of a prima facie case and the further logical reason that the employer was the person best able to explain legitimate reasons for failing to hire (or firing) an otherwise qualified person who was within the protected class. While I agree that the precise formulation spelled out *McDonnell Douglas* need not be transmitted verbatim to the jury, I surely see no error in so doing. Furthermore, if the majority opinion can be read to suggest that the jury need not be informed of the role played by the prima facie case in the *McDonnell Douglas* matrix, I must demur.

. Inherent rational grounds underlie the *McDonnell Douglas* prima facie case rule. As noted by the Supreme Court in *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 359 n.45, 97 S.Ct. 1843, 1867, 52 L.Ed.2d 396 (1977), "[p]resumptions shifting the burden of proof are often created to reflect judicial evaluations of probabilities and to conform with a party's superior access to the proof." The Supreme Court has utilized the prima facie case to meet the problems of proof in discrimination cases. The important role of the prima facie case should, therefore, be communicated to the jury. Failure to do so slights both the logic and the underlying policies giving rise to it. These reasons do not vanish once defendant has adduced sufficient rebuttal evidence to protect against a directed verdict. Some instruction to the jury on the prima facie case is necessary for a full appreciation of what is involved in discrimination cases. So long as a trial court does not fall into the mistake of placing upon defendant an improper burden, its commenting on shifting burdens imports no error. Certainly, it will not be difficult for a trial judge to explain to a jury what a prima facie case means and what is necessary to rebut it.

The difficulties involved in instructing a jury in a products liability case, where liability is alternately premised on the three theories of strict liability, negligence, and warranty are no less complex than the shifting burdens outlined in *McDonnell Douglas.* Nor would such an instruction be beyond the ability of the average juror to adequately comprehend and appreciate. This important aspect of discrimination cases should not be sidestepped or hidden from the jury on the unsupported theory that it might be too complex or confusing.

## II.

I also think it important to set out precisely what burden shifts to the defendant once the plaintiff has made out a prima facie case. Although it has been stated that once the plaintiff has made out a prima facie case, the "burden of proof" shifts to the defendant, an analysis of the Supreme Court cases compels the conclusion that this does not mean proof by a preponderance of the evidence. In *Furnco Construction Corp. v. Waters, supra,* 438 U.S. at 577, 98 S.Ct. at 2950, the Court discussed the *McDonnell Douglas,* test, explaining that once a prima facie case had been made out, "the burden which shifts to the employer is merely that of *proving* that he based

his employment decision on a legitimate consideration, and not an illegitimate one such as race" (emphasis added). While this language suggests that the burden which shifts to the defendant is that of proof, rather than merely going forward, the Court's action in our case of *Sweeney v. Board of Trustees of Keene State College,* 569 F.2d 169 (1st Cir.), *vacated and remanded,* 439 U.S. 24, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978), introduces a slightly different twist. In our opinion, we stated that the *McDonnell Douglas* standard required defendant "to prove absence of discriminatory motive." 569 F.2d at 177. In vacating the judgment, the Court found that this placed a heavier burden on defendant than either *McDonnell Douglas* or *Furnco* required. In harmonizing *Furnco* with the Court's action in *Sweeney,* I conclude that the burden which shifts to defendant once a prima facie case has been set forth is that of "proving," "articulating," or "showing" a legitimate, nondiscriminatory reason for its action.[1] The burden which shifts to defendant is that of rebutting the inference established by plaintiff's prima facie case. The burden of proof remains with the plaintiff; the burden which shifts to defendant is that of meeting the presumption or inference of improper motive which flows from plaintiff's prima facie case. *See International Brotherhood of Teamsters v. United States, supra,* 431 U.S. at 359 and n.45, 97 S.Ct. 1843. Defendant is not required to prove a negative, *i. e.,* absence of discriminatory motive, but rather is required to produce sufficient evidence to show the existence of a legitimate reason for the action. It is clear that defendant need not prove that the nondiscriminatory reason is not pretextual; this is the burden which shifts back to plaintiff once defendant has presented a legitimate, nondiscriminatory reason. Once a prima facie case is made out, the defendant must rebut it. The quantum of evidence will vary from case to case. More than a scintilla, but less than a preponderance is required.

### III.

My next point of clarification is with that portion of the majority opinion, *ante* at 1011 and 1019–1020, where the burden which is placed on plaintiff is that of proving that he would not have been fired "but for" age. With the following gloss, I concur. The "but for" analysis has been used at least on one occasion by the Supreme Court in a Title VII case, *McDonald v. Santa Fe Trail Transp. Co.,* 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976), where the Court discussed the burden on plaintiff in showing defendant's reasons to be pretextual.

The use of the term "pretext" in this context does not mean, of course, that the Title VII plaintiff must show that he would have in any event been rejected or discharged solely on the basis of his race, without regard to the alleged deficiencies; as the closing sentence to the quoted passage makes clear, no more is required to be shown than that race was a "but for" cause. See also *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 425 [95 S.Ct. 2362, 2375, 45 L.Ed.2d 280] (1975). *Id.* at 282 n.10, 96 S.Ct. at 2580. As I think this makes clear, the burden on plaintiff once defendant denies discriminatory motive is that of showing that the legitimate motive advanced by defendant is pretextual. In other words, plaintiff need not— once having established a prima facie case—canvass the entire waterfront and eliminate every other possible motive for the discharge. He must simply meet defendant's alleged valid reason by showing it to be a pretext. To the extent that the majority opinion can be understood to place a heavier burden on plaintiff than this, I suggest that it places plaintiff under an impermissible handicap.

### IV.

The majority addresses the question of the propriety of future damages in lieu of reinstatement in the Damages portion of

1. In vacating and remanding *Sweeney,* 569 F.2d 169, the Supreme Court observed that "words such as 'articulate,' 'show,' and 'prove,' may have more or less similar meanings depending upon the context in which they are used . . ." *Board of Trustees of Keene State College v. Sweeney,* 439 U.S. 24, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978).

**1026**

the opinion and suggests that it may be permissible to order such payments. *Ante* at 1023. I believe this to be in error. The majority cites two cases from the Fifth Circuit in support of this proposition, *Wirtz v. Atlas Roofing Mfg. Co.*, 377 F.2d 112 (5th Cir. 1967), and *Goldberg v. Bama Mfg. Corp.*, 302 F.2d 152 (5th Cir. 1962). Contrary to the suggestion of my brethren, neither case is authority for the proposition that a damages award for lost *future* earnings can be made: both cases involved the possibility of a damages award for *past* lost wages.[2] The voluntary payment of $100 in *Atlas* referred to by the majority was for reimbursement for lost wages. 377 F.2d at 115 n.5. And in *Bama*, though there is one ambiguous statement, 302 F.2d at 156, to the effect: "[s]uch an award might also include damages in lieu of reinstatement[ ]", the case makes it clear that the damages being discussed are reimbursement for lost wages. *Id.* at 155–6 & nn.1 & 2. *See also Mitchell v. Stewart Brothers Construction Co.*, 184 F.Supp. 886, 902–3 (D.Neb.1960); *Mitchell v. Dyess*, 180 F.Supp. 852, 854 (S.D.Ala.1960). The speculative nature of future earnings was specifically recognized in *Stewart*, 184 F.Supp. at 903, a case cited by *Bama* at 302 F.2d 155 n.1.

The Age Discrimination in Employment Act treats damages as follows:

(b) The provisions of this chapter shall be enforced in accordance with the powers, remedies, and procedures provided in sections 211(b), 216 (except for subsection (a) thereof), and 217 of this title, and subsection (c) of this section. Any act prohibited under section 623 of this title shall be deemed to be a prohibited act under section 215 of this title. Amounts owing to a person as a result of a violation of this chapter shall be deemed to be unpaid minimum wages or unpaid overtime compensation for purposes of sections 216 and 217 of this title: *Provided,* that liquidated damages shall be payable only in cases of willful violations of this chapter. In any action brought to enforce this chapter the court shall have jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter, including without limitation judgments compelling employment, reinstatement or promotion, or enforcing the liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation under this section.

29 U.S.C. § 626(b). The statute speaks clearly in terms of "unpaid . . . wages" as the measure by which damages are to be determined.[3] In *Lorillard v. Pons, supra,* 434 U.S. at 582, 98 S.Ct. at 871, the Court, in discussing the interface between FLSA and ADEA, observed that the "selectivity that Congress exhibited in incorporating provisions and in modifying certain

---

**2.** To the extent that the two Fifth Circuit cases can be read for the proposition that an award of future damages might be permissible—a view which I vigorously dispute—there are two distinguishing points between those cases and the case at bar. Both *Atlas* and *Bama* antedated amendments to the FLSA allowing a private right of action. *See* 29 U.S.C. § 216(b), Nov. 1, 1977, Pub.L. 95–151, § 10(a), (b), 91 Stat. 1252. In both of the cited cases, the Secretary of Labor brought the action. A private action carries with it the ever-present hope of substantial money awards, a factor not present in enforcement actions brought by the Secretary. I think the legislative history reflects that Congress did not intend substantial money damages to be a factor in any age discrimination cases. *See Vasquez v. Eastern Air Lines,* 579 F.2d 107 (1st Cir. 1978). The fact that the two cases entailed retaliatory discharge also distinguishes the principles governing the courts' findings. As noted by the Supreme Court, "[i]n

effectuating the policies of the Act the proper reach of equity power in suits by the Secretary under the wage provisions of the statute [*i. e.,* 29 U.S.C. §§ 216 & 217], and that in suits under the discharge provisions [29 U.S.C. § 215], are attended by quite different considerations . . . ." *Mitchell v. De Mario Jewelry,* 361 U.S. 288, 295, 80 S.Ct. 332, 337, 4 L.Ed.2d 323 (1960). The enforcement provisions of the ADEA refer to 29 U.S.C. §§ 216 & 217. I am not sure to what extent cases brought under § 215 are instructive for cases alleging discriminatory rather than retaliatory discharge.

**3.** ADEA lifted language directly from the FLSA regarding "unpaid *minimum* wages" and "unpaid *overtime* compensation" (emphasis added). We must assume the words "minimum" and "overtime" are superfluous and irrelevant to the ADEA.

FLSA practices strongly suggests that but for those changes Congress expressly made, it intended to incorporate fully the remedies and procedures of the FLSA." Damages under the FLSA have been restricted to unpaid wages and other compensation and an equal amount as liquidated damages.[4] *Vasquez v. Eastern Air Lines, Inc.,* 579 F.2d 107, 109 & cases cited therein (1st Cir. 1978). There is no warrant in either the statute or the case law for interpreting the FLSA as a basis for an award of future monies. The legislative history of the ADEA reveals congressional awareness of the problem substantial money damages might pose. Senator Javits, a floor leader for the Age Discrimination in Employment Act, stated: "The enforcement techniques provided by [the ADEA] are directly analogous to those available under the Fair Labor Standards Act; in fact [the ADEA] incorporates by reference, to the greatest extent possible, the provisions of the Fair Labor Standards Act." 113 Cong.Rec. 31254 (1967). There is no provision in the FLSA for an award based on loss of future earnings; I think, therefore, that such an award is inconsistent with the ADEA. The Supreme Court impliedly adopted this view in observing "Congress must have meant the phrase 'legal relief' [in 29 U.S.C. § 626(b)] to refer to judgments 'enforcing . . . liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation.'" *Lorillard v. Pons, supra,* 434 U.S. at 583 n.11, 98 S.Ct. at 871.

Damages in age discrimination cases are not premised on the exact formulations permissible in an ordinary tort case. "Put more plainly, money damages in a case under the Age Discrimination Act must be liquidated as of the date of judgment." *Monroe v. Penn-Dixie Cement Corp.,* 335 F.Supp. 231, 235 (D.Ga.1971). *See also Bishop v. Jelleff Associates,* 398 F.Supp. 579, 597 (D.D.C.1974); *Schulz v. Hickok Mfg. Co., Inc.,* 358 F.Supp. 1208, 1217 (D.Ga. 1973). *Cf. Brennan v. Ace Hardware Corp.,* 495 F.2d 368, 373 (8th Cir. 1974) (citing and following the language from *Monroe, supra,*

335 F.Supp. at 235). Nor is *Mitchell v. De Mario Jewelry,* 361 U.S. 288, 80 S.Ct. 332, 4 L.Ed.2d 323 (1960), to the contrary. That case involved a narrow point of statutory construction, namely, whether the 1949 amendment to the FLSA which added a proviso prohibiting the Secretary of Labor from seeking unpaid overtime wages on behalf of any employee, 29 U.S.C. § 217, Oct. 26, 1949, c. 736, § 15, 63 Stat. 919, also extended an interdict on the Secretary's bringing suit for lost wages for retaliatory discharge under 29 U.S.C. § 215(a)(3). The Court found that the Secretary could institute suit for *lost* wages. 361 U.S. at 294–95, 80 S.Ct. 332. Nothing in the case intimates that damages for speculative losses in the future can be awarded under the statute.

The law is clear, I believe, that damages must be liquidated as of the date of judgment.

---

4. The trial court's award for back pay and liquidated damages was clearly within the meaning and intent of the statute.